## ILLINOIS CENTRAL RAILROAD COMPANY

### *v.*

## WILLIAM F. WELCH.

1. RAILROAD COMPANIES—*liability of—for injury to their servants occasioned by dangerous structures.* In an action against a railroad company for injuries sustained by the plaintiff, while in the service of the company as a brakeman, the evidence showed that the injury complained of happened while plaintiff was engaged in the discharge of his duties, by collision with a projecting awning from one of the station houses on defendant's line of road, whereby he was knocked off the car, and so injured as to require amputation of his left arm; and that the dangerous position of this awning was well known to the division superintendent and division engineer, whose attention had been called to it a long time prior to the accident: *Held*, that this was negligence of such a character that the company must be held liable for the damages sustained.

2. As said by this court in the case of the *Chicago & N. W. R. R. Co.* v. *Swett*, 45 Ill. 201, railroad companies are bound to furnish their servants safe materials and structures, and must, in the first instance, construct their road with all the necessary appurtenances.

| 52 | 183 |
| 31a | 314 |
| 52 | 183 |
| 33a | 383 |
| 52 | 183 |
| 35a | 461 |
| 52 | 183 |
| 140 | 283 |
| 40a | 591 |
| 52 | 183 |
| 150 | 397 |
| 155 | 215 |
| 52 | 183 |
| 163 | 314 |
| 59a | 72 |
| 52 | 183 |
| 63a | 177 |
| 66a | 643 |
| 66a | 657 |
| 52 | 183 |
| 184 | 411 |
| 52 | 183 |
| d91a | [1]175 |
| 52 | 183 |
| 92a | [4]313 |
| 52 | 183 |
| h192 | [6]640 |
| 192 | [7]641 |
| 52 | 183 |
| 201 | [7]154 |
| e103a | [7]575 |
| 52 | 183 |
| 105a | [8]169 |
| 52 | 183 |
| 108a | [7]362 |
| e109a | [4]550 |
| 52 | 183 |
| e210 | [1]231 |
| 211 | [7]596 |
| 112a | 470 |
| 52 | 183 |
| 212 | [7]177 |
| 214 | [7] 81 |
| 114a | [1]357 |

3. SAME—*must keep in proper repair.* And they must be kept in proper repair; and a person entering the service of a railroad company, has a right to presume that in these respects it has discharged its obligations.

4. SAME—*perils of the service—to what extent assumed.* A person engaging in this service assumes the ordinary perils of railroad life; and also special dangers arising from the peculiar condition of the road, so far as he is aware of their existence, and his exposure to them would be his voluntary act.

5. But in this case, the danger was of such a character as well might escape the observation of a person who had been in the employ of the defendant for a long period of time; and there is no reason for supposing that the plaintiff had acquired knowledge of the unsafe condition of this awning before his injury, as he had been but two months upon the road, and, except upon two trips, had always passed this station in the night.

6. CAUSE OF ACTION—*release of—what amounts to.* And in such case, it was error for the court to instruct the jury that the following instrument, executed by plaintiff, did not release the cause of action in this case:

"Received of the Illinois Central Railroad Company $40, in full payment and satisfaction for *one month's time, in April, while laid up with injuries received while breaking,* and in full satisfaction of all claims, demands, damages and causes of action against said company, hereby forever releasing said company therefrom, as witness my hand and seal, upon this 5th day of *June,* A. D. 1866.                    [Seal.]                    W. F. WELCH."

7. SAME—*release procured by means of false representations—no bar.* But if the plaintiff was induced to sign such release, by representations that it covered merely a month's time, or wages, or if he signed it under such a belief, induced by the words or acts of defendant's agents, it would not operate as a bar, and this question should be left to the jury.

8. NEW TRIAL—*excessive damages.* And in such case, a judgment for ten thousand dollars damages must be pronounced excessive; not the slightest foundation for vindictive damages existing.

APPEAL from the Circuit Court of Cook county; the Hon. E. S. WILLIAMS, Judge, presiding.

The facts in this case are fully stated in the opinion.

Mr. B. C. COOK, for the appellant.

Messrs. HIGGINS, SWETT & QUIGG, and Mr. I. N. ARNOLD, for the appellee.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

The facts of this case are stated with substantial correctness in one of the arguments by counsel for appellant, as follows:

The Illinois Central Railroad track at Mendota is about 18 inches from the edge of the awning, which projects from the station house, so that when a freight car stands upon the track the inside edge of the car is about even with the outer edge of the awning.

The awning is about 18 inches higher than the top of the car.

On the 28th day of February, 1866, Welch was a brakeman on a freight train running on that road. The cars were coming in to Mendota at a rate of speed about as fast as a man would walk. Welch was walking by the side of the train for the purpose of cutting off a portion of it. There was a ladder on each side of the car.

The plaintiff had pulled out the pin and disconnected a portion of the train from the engine, and was walking along beside the train when the engineer signaled for brakes. The plaintiff ran up the ladder on the car on the side next the station house, and before he reached the roof of the car he was struck by the projecting awning, and knocked from the car; his left arm was broken, and injured so that it had to be amputated. The left side of his head was bruised with a scalp wound over the same. Was treated by physicians until about the 1st of May, 1866.

It should be further stated that the attention of the division superintendent and division engineer had been some time previously called to the dangerous position of this awning.

When the engineer called for brakes, it was the duty of the appellee to mount the car for the purpose of applying them. He was therefore injured while in the performance of his duty in obedience to an order. The jury found a verdict for plaintiff for ten thousand dollars, on which the court rendered judgment.

On this state of fact it is urged by counsel for appellant that appellee was not entitled to recover. They insist the rule of law to be, that a person engaging for a particular service, and knowing, or having full opportunity to know, all the conditions and circumstances of the service, assumes all risk arising therefrom, in the absence of fraud or concealment on the part of the master. As a general legal proposition this is undoubtedly true, but we are of opinion it does not cover the facts of this case. There are many freight depots and station houses upon the line of the Central Railway, and it would be preposterous in us to say, or to ask a jury to say, that a brakeman engaging in the service of the company must be held to know whether or not there may be one among them whose roof or awning so projects over the line of road that a brakeman on a freight train, in the performance of his duties, would be liable to be swept from the train by collision with it.

We held, in the *Chicago & N. W. R. R. Co.* v. *Swett*, 45 Ill. 201, that the corporation is bound to furnish to its servants safe materials and structures, and must, in the first instance, properly construct its road with all its necessary appurtenances. This, of course, includes the obligation to keep in proper repair. When the appellee entered the service of this company, he had a right to presume that it had, in these respects, discharged its obligations. The ordinary perils of railroad life he of course assumed, and also any special dangers arising from the peculiar condition of the road so far as he knew of their existence. For exposure to such dangers he would be supposed to demand and receive an increased compensation, and his exposure to them would be his voluntary act. But it would have been morally impossible for him to have ascertained the existence of all such special perils as this which caused the injury, and there is no reason for supposing that he had acquired such knowledge before the accident, as he had been but two months upon the road, and had always passed the station, where he was injured, in the night, except upon two trips. Moreover, it is to be remarked

that the danger was of such a character that it might well escape the observation of a person who had been even for a long time upon the road.

The evidence shows, however, that the peril had long before been observed by other employees, and the attention of both the division superintendent and division engineer called to it. This circumstance takes away all excuse from the company, and brings the case within the legal proposition of appellant's counsel, since it was a peril known to the employer and not revealed to the employee.

But while we hold the company liable, we are of opinion the court erred in instructing the jury as matter of law that the release executed by appellee did not release the cause of action in this case. That release was as follows :

" Received of the Illinois Central Railroad Company $40, in full payment and satisfaction for *one month's time in April, while laid up with injuries received while braking,* and in full satisfaction of all claims, demands, damages and causes of action against said company, hereby forever releasing said company therefrom, as witness my hand and seal upon this 5th day of *June,* A. D. 1866.

[SEAL.]                              W. F. WELCH."

The words underscored were written, the remainder of the receipt was printed.

It cannot be denied that this release is, in its terms, sufficiently broad to cover the present action. If, however, the appellee was induced to sign it by representations that it covered merely his claim for a month's time, or a month's wages, or if he signed it under such a belief, induced by the words or acts of the agents of the appellant, then, of course, the release would not be a bar to the prosecution of this suit. This question should have been left to a jury.

It is not, however, merely for the error in this instruction that we reverse this judgment. The damages are excessive.

It has become a matter of public notoriety, and is evidenced
by many of the records brought to this court, that juries may
generally assess an amount of damages against railway
corporations which, in similar cases between individuals, would
be considered unjust in the extreme.    It is lamentable that
the popular prejudice against these corporations should be so
powerful as to taint the administration of justice, but we can
not close our eyes to the fact.    When this becomes apparent,
the courts must interfere.    However natural this prejudice, or
however well deserved, it can not be permitted to find expres-
sion in unjust verdicts.    A railway company is entitled to,
and must receive, the same measure of justice that is meted
out in a suit between John Doe and Richard Roe.    Juries
must be taught, if possible, that when they enter the jury box
they are entering upon a duty so high and solemn that they
must shrink from the influence of prejudice or passion as they
would shrink from crime.    Doubtless the twelve men who
composed this jury were, individually, honest men, but we can
not believe they had a proper sense of their duty and respon-
sibility as jurors.      There was in this case no malice or
oppression on the part of the company, and therefore no room
for vindictive damages.    The injury to the plaintiff was merely
an accident, resulting, it is true, from the carelessness of the
company, but still, an accident in the sense that it was
unintentional.    The injury, although severe, is not one that
wholly disables the plaintiff.    He testifies that he has since
been learning the trade of a printer.    His wages as a brake-
man were forty dollars per month, amounting to four hundred
and eighty dollars per annum.    The annual income he would
derive from $10,000, the amount of this verdict, would be, at
the ordinary rate of interest in this State, one thousand dollars.
The wages he was receiving would not amount to this verdict
in twenty years.    In one sense, it is true, a pecuniary value
can not be placed upon an arm.    But inasmuch as the law can
give only a pecuniary compensation, and as the plaintiff seeks
that by his suit, we are obliged to take a practical and almost

unfeeling view of this question, and when the injury is one that will still leave a plaintiff able to earn as much, in many occupations, as he was earning before the accident, we must hold a verdict to be unreasonable which gives him at once a sum larger than the great majority of the community earn by a long life of toil, and the interest of which would amount to more than twice his wages. When we consider this, and remember that such verdicts for injuries inflicted without design or malice, are never rendered in suits between individuals, and that the statute limits the damages for the loss of life to five thousand dollars, we think it our duty to pronounce the damages in this case excessive.

The judgment is reversed and the cause remanded.

*Judgment reversed.*