COLORADO CENTRAL R. R. CO. *v.* OGDEN.

1. It is the well-settled doctrine that the master is not liable for injuries sustained by one servant through the negligence of a fellow-servant.  But risks arising from the negligence of the master are not included among those which the servant is presumed to assume.

2. The master is liable for his own negligence in the selection of servants, machinery and appliances.  But defects must be known to the master or be such as should have been known to him as a prudent man.

3. Where it is the province of a certain employee of a railroad company to supervise repairs of defects in a railway, his negligence in respect to such defects is the negligence of the company, and notice to him of such defects as are within his province to repair, is notice to the company.

4. The general rule is that if the employee knows of the defects and continues in the service, he is deemed to have assumed the risks, and the maxim is *volenti non fit injuria.*  But if a person of ordinary prudence would not have believed the defects dangerous, he may disregard them without losing his right to complain, if he suffers from the defect while pursuing his ordinary course.

5. Notice to the master by the employee of defects in associates or material does not necessarily fix the master's liability for injury to the employee.  It is incumbent on the latter to show that there was no want of due and reasonable care upon his part; he is not exempt from the operation of the rule that one cannot recover for an injury which is the proximate result of his own failure to exercise ordinary care.

6. A railroad company is not *prima facie* liable to any of its servants for injuries resulting to them because of defects in their rolling stock or road-bed.  The company is bound to that ordinary care which must be measured by the dangers of the service and proportioned to it, but it does not *warrant* or *insure* against defects.

*Appeal from District Court of Jefferson County.*

THE appellee had judgment in the court below for $5,000.00.  The facts are sufficiently stated in the opinion.

Messrs. H. M. & W. TELLER, for appellant.

Messrs. BROWNE & PUTNAM, for appellee.

ELBERT, J.   This was an action of case brought by the appellee against the appellant for injuries received by him while in the employ of the appellant as conductor of one of its trains.

It appeared by the evidence that the appellee was the only conductor employed by the appellant; that it was his duty to take charge of a mixed train of cars, some for freight and some for passengers.   That as such conductor it was the duty of the appellee to run all trains and to do all work that was to be done as conductor.   That three-fourths of a mile from the Golden depot there was a coal bank where the company procured coal.   That on the 12th day of April, 1872, the appellee took a locomotive with engineer and brakeman and went after three loaded coal cars, standing at the coal bank; that on the way he took two empty box cars and pushed them before the engine to the vicinity of the coal bank where the accident happened. The track between the yard and the coal bank was only used to haul coal cars over.   It also appears by the testimony of the appellee that the track was bad and had been so for some weeks; that he had seen that it was especially bad a week before, and that he had reported to A. C. Harris, assistant superintendent, its condition.   The evidence disclosed that there was some low joints.   The road-bed was narrow.   The ties extended six or eight inches over the bank, the earth was about eight inches outside of the rails, and water was running against the bank.   There was no claim that Harris had agreed or promised to repair the roadway.

It also appears by the testimony that the appellee took with him the two box cars, not intending to have them filled with coal, but to save the labor and trouble of hauling them to the yard, as they stood between the yard and coal bank.   The appellee had knowledge of the defective

condition of the roadway, and that it had not been repaired after notice. His attention was especially called to it as the train approached the defective point, and he attempted to signal the engineer to stop, but failed to attract his attention. The cars were thrown from the track, and the appellee's hip was broken, resulting in an injury more or less permanent.

The facts presented by the record involve the law respecting the important relation subsisting between a railroad company and its employees. The relation is that of master and servant.

If the superintendent Harris is to be regarded as a fellow-servant, and the negligence of which the injury was the result, as his negligence, the appellee cannot recover.

It is now the settled doctrine of both England and America, that the master is not liable for injuries suffered by one servant through the negligence of a fellow-servant. We do not deem it necessary to cite numerous authorities to a doctrine so generally recognized. The leading English case is that of *Priestly* v. *Fowler*, 3 M. & W. 1. The leading American case is that of *Farwell* v. *Boston & Worcester R. R. Co.*, 4 Metc. 49. See, also, 1 Redfield on Law of Railways, § 131, and cases there cited.

The reason of the rule commonly assigned is that it is but just and fair that the servant should take upon himself the ordinary and usual hazards of his employment over which his employer has but little or no control, and against which he is best situated and best able to guard. Knowing the perils of the employment in which he engages, he is presumed to contract with reference to them and to demand and receive a compensation which covers them.

There are also other reasons in support of the rule springing from considerations of public policy.

As that a contrary rule would subject the master to unreasonable, and not unfrequently, ruinous burdens; that it would encourage the servant to omit that diligence and caution which is his best protection; that it would tend to an abatement of that vigilance which is one of the chief

protectors of the public against the negligence of servants; that under the rule denying the remedy it becomes the special interest of the servant to protect himself, thus securing the protection of the public; that it concurs with the rule which makes the master responsible to third persons, not only for his own negligence but for the negligence of his servants in securing from both master and servant the highest diligence and caution, and thus, without hardship to any one, secure the safety of all.

Qualifying the foregoing rule is the further rule that risks arising from the negligence of the master are not included among those which the servant is presumed to assume. On the contrary, the master impliedly (if not expressly) contracts to use ordinary care and diligence (proportioned to the danger of the service) in the selection of competent servants and safe machinery and appliances, and is liable for his own negligence in these respects. *Cleveland, etc., R. R. Co.* v. *Keary,* 3 Ohio, 201; *Mad River, etc., R. R. Co.* v. *Barber,* 5 id. 541; *Ill. Cent. R. R. Co.* v. *Welch,* 52 Ill. 183; *Chicago, etc., R. R. Co.* v. *Sweet,* 45 id. 197; *Harrison* v. *Cent. R. R. Co.,* 2 Vroom, 293; *Warner* v. *Erie R. R. Co.,* 39 N. Y. 468; *Laning* v. *N. Y. C. R. R. Co.,* 49 id. 521; *Greenleaf* v. *Ill. Cent. R. R. Co.,* 29 Iowa, 14.

It is under this rule that the plaintiff claims to recover. In such a case, however, the defect must be known to the master or such as should have been known to him as a prudent man having a due regard to the safety of his employees. *Wright* v. *N. Y. Cent. R. R. Co.,* 25 N. Y. 562; *Greenleaf* v. *Ill. Cent. R. R. Co.,* 29 Iowa, 14; *Jones* v. *Yeager,* 2 Dill. C. C. R. 64.

The evidence disclosed that about a week prior to the accident the plaintiff notified A. C. Harris, assistant superintendent of the road, of the bad condition of the roadway at the point where the accident occurred. That A. C. Harris was assistant superintendent; "that he was running the road in the absence of Mr. Sickels;" that he "looked after the interests of the road;" that in the absence of the roadmaster the plaintiff had reported to him other defects in the

road-bed, which he had repaired, is all that the record discloses respecting his powers and duties as an employee of the company. We think the plaintiff would have done well to have shown more fully the powers and duties of this assistant superintendent. However, as other defects in the roadway had been reported to him, and had been repaired by him, the jury might fairly presume that the repair of the road was among his duties, and say that the defect was reported by the appellee to the proper employee of the company.

Corporations, necessarily, act through agents, and it may be said, generally, that the negligence of an officer of the company to whom is committed any particular branch of its business is the negligence of the company.

The repair of the road seems to have been under the supervision of this assistant superintendent; herein he represented the company, and his negligence in respect to defects, which, within the scope of his authority, it was his province to repair, is to be attributed to the company as its personal negligence, otherwise a corporation as acting alone through its general officers would not be chargeable in any case. Shearman & Redfield on Negligence, § 89; *Cleveland, etc., R. R. Co.* v. *Keary*, 3 Ohio St. 201; *Illinois Cent. R. R. Co.* v. *Welch*, 52 Ill. 183; *Patterson* v. *P. & C. R. Co.*, 76 Pa. 389; *Clarke* v. *Holmes*, 7 H. & N. ~~9010~~ 937.

In this view the appellee insists that the negligence from which the injury resulted was the negligence of the company. Equally in another view, independent of the question of notice to the superintendent, the jury may have found the negligence that of the defendant, to wit: that it was the duty of the defendant to use reasonable diligence to keep the roadway in proper repair, and that the condition of the roadway was of such a character, and for such a length of time, that the defendant knew of it, or should have known of it.

It is immaterial which view be taken, as either involves the same result. It does not appear but that the road was

well constructed in the first instance. The evidence is to the effect that it had been out of repair from two to six weeks, and the inference is that prior to that time it was in repair. Aside from this, the law presumes that the master had done his duty in this respect. Wood's Master & Servant, § 346.

The plaintiff had been in the employment of the company as conductor for about five months prior to the accident, and the presumption is that at the date of the employment the track was in repair. Hence we may say : 1. That the negligence of the company was not in a failure to furnish a proper roadway in the first instance, but in a failure to keep it in repair. 2. The plaintiff did not originally contract with reference to the risks incident to the condition of the roadway at the time of the accident. Conceding, then, the negligence of the company in failing to keep the roadway in repair, we are confronted by the fact, indisputably established by the testimony of the appellee himself, that he had full knowledge of the defective condition of the roadway and continued the service. The general rule is, that under such circumstances the servant cannot recover. When he knows of the defect, and continues the service, he is deemed to have assumed the risks, and the maxim is—*volenti non fit injuria. McGatrick* v. *Watson*, 4 Ohio, 566 ; *Ill. Cent. R. R. Co.* v. *Welch*, 52 Ill. 183 ; *McGlynn* v. *Brodie*, 31 Cal. 376 ; *I. B. & W. R. Co.* v. *Flanigan*, 77 Ill. 365; *Hayden* v. *Smithville M. Co.*, 29 Conn. 548 ; *Greenleaf* v. *Ill. Cent. R. R. Co.*, 29 Iowa, 14.

But this rule has been modified by a series of decisions commencing with the leading case of *Snow* v. *The Housatonic R. Co.*, 8 Allen, 441, which cannot be disregarded. Shearman & Redfield, in their work on Negligence, say : "This rule is, however, applicable only to such defects as the servant ought reasonably to have foreseen might endanger his safety. If a person of ordinary prudence would not have believed the defect dangerous, the servant might disregard it without losing his right to complain, if while pursuing his ordinary course he suffers from such defect." Shearman

& Redfield on Negligence, § 95; *Snow* v. *Housatonic R. Co.*, 8 Allen, 441; *Britton* v. *G. W. Cotton Co.*, 7 Exch. 130.

The question presented, then, on the trial below, was, did the appellee, knowing of the defective condition of the roadway, come fairly within this exception to the rule? Whether the evidence so shows, in view of the determination of this case, it is not proper for us to say.

There is undoubtedly authority for saying that where the master has promised to repair the defect, and the servant remains in the service upon such an inducement, and with a reasonable expectation that it would be repaired, that the servant may recover. Shearman & Redfield on Negligence, § 99; *Greenleaf* v. *Ill. Cent. R. R. Co.*, 29 Iowa, 14; *Patterson* v. *P. & C. R. Co.*, 76 Pa. 389; *Laning* v. *N. Y. C. R. Co.*, 49 N. Y. 521; *Clark* v. *Holmes*, 7 H. & N. 937.

There is no claim, however, that there was any promise to repair in this case, but it is insisted in this behalf by the appellee that the fact of the notice given by him to the assistant superintendent had the effect to fix the liability of the company, notwithstanding the appellee's knowledge of the defective roadway, and that thereafter he was at liberty to act upon the presumption that the defect had been repaired, and recover for his injury.

We cannot assent to this proposition. Remaining in a service, as we have seen, with knowledge of defects in associates or material, is not necessarily negligence, unless the real danger be apparent. Shearman & Redfield on Negligence, § 95; Wood's Master & Servant, § 32.

Nor is it conclusive evidence that the servant has waived objections to the defects. Shearman & Redfield on Negligence, § 96.

The effect of notice by the servant to the master of defects is to rebut this last presumption; but unless followed by inducement to remain, it in nowise affects the question of the servant's negligence in remaining in a dangerous service with knowledge of the defects, except that in case of a defect of which it cannot be reasonably expected that the

master has notice, it is the duty of the employee to give him notice ; and a neglect of such duty exempts the employer from responsibility. *Patterson* v. *P. & C. R. Co.*, 76 Pa. 394.

But while notice meets this requirement, it by no means necessarily fixes the liability of the master, nor exempts the servant from the operation of the elemental rule that one cannot recover for an injury which is the proximate result of his own failure to exercise ordinary care.

It is not enough, therefore, for the appellee in this case to show that he gave the master notice of the defective roadway in order to recover, but having knowledge of the defect, and continuing the service, in order to bring himself within the exception which we have laid down, and justify a departure from the rule that exempts the master when the servant has knowledge of the defect, he must further show that there was no want of due and reasonable care ; that the defects were not such as could reasonably be foreseen might endanger his safety. If the roadway was so obviously dangerous as that a man of ordinary prudence would not have ventured, the master cannot be held liable for the result. In such case the law adjudges the servant guilty of concurrent negligence, and he cannot recover. It is the case of equal knowledge, and a voluntary exposure to known hazards.

We think the rule well laid down by Mr. Wood, in his work on Master and Servant, § 328.

"Where a servant is employed on work which, equally within the knowledge of the master and the servant, is of a dangerous nature, the master is not liable for the consequences of an accident occurring to the servant in the course of that employment, unless there be negligence on the part of the master, and the absence of rashness on the part of the servant. A servant is bound to exercise his own skill and judgment so as to protect himself in the course of his employment, and the master is not regarded as warranting generally his safety. He is himself bound to exercise proper care, and cannot claim indemnity from the master for an

injury resulting to him, which he might have prevented, if he had himself been reasonably vigilant."

Even in the case of a promise to repair, the plaintiff must still show that he has not materially contributed to the injury by his own want of ordinary prudence.

In the case of *Clark* v. *Holmes,* cited *supra,* COCKBURN, C. J., says : "If a jury should find that a party complaining had materially contributed to the injury by his own rashness, the action could not be maintained, inasmuch as it is well established that a plaintiff who has materially contributed to his own injury by his own negligence cannot recover, although he may show negligence in the opposite party."

In the case of *Patterson* v. *P. & C. R. Co.,* cited *supra,* GORDON, J., says : "In this discussion, however, we are not to forget that the servant is required to exercise ordinary prudence. If the instrumentality by which he is required to perform his service is so obviously and immediately dangerous, that a man of common prudence would refuse to use it, the master cannot be held liable for the resulting damage. In such a case the law adjudges the servant guilty of concurrent negligence, and will refuse him that aid to which he would otherwise be entitled. Why should a less stringent rule apply in the case of notice, unaccompanied by promise to repair ? "

The question of negligence is to be determined by the circumstances of each particular case. In this case it depended not only on the defective condition of the roadway, its apparent danger, and the appellee's knowledge of it, but upon the manner in which the plaintiff attempted to pass over it, the rate of speed at which he ran his train, the fact that this portion of the road was designed and used for special service, if such was the fact.

Whether the box-cars which he attempted to take over the defective road were necessary for the particular service in which he was then engaged, and such as were used on this particular branch of the road, whether they were more

liable, by reason of their height or other features of construction, to the accident which produced the injury; the position of the plaintiff, that he had the entire control and management of the train, that he, at the time, was not acting under the immediate orders or instructions of an officer of a higher grade, who had a right to command him; the duty of the conductor to exercise care and caution, not only in respect to his own safety, but in respect to the property of his employer and the lives of others on the train, were all considerations for the jury to weigh in determining the negligence of the appellee, and were not to be taken from the jury by mere proof of notice.

If, under all the circumstances, the act of the appellee was that of a man of ordinary prudence, then he may recover for the negligence of the company, notwithstanding his knowledge of the defects of the road. If both, in a measure, failed to discharge their duty fully, the question is, to whose act shall the blame be imputed, whose act was the proximate cause of the injury? If the appellee's act was such as a prudent man, under precisely the same circumstances, would not have done, then, although the company utterly failed in its duty, no recovery can be had. If the injury would not have happened but for appellee's want of care, the fault cannot be imputed to the company, although its breach of duty also contributed to the injury. Wood's Master and Servant, § 359.

Whether or not, under all the circumstances, the negligence of the master, or the negligence of the servant, was the proximate cause of the injury, in all cases where there is any doubt, is a question for the jury. Wood's Master and Servant, §§ 359–377; *Snow* v. *Housatonic R. Co.*, 8 Allen, 441; *Patterson* v. *P. & C. R. Co.*, 76 Pa. 394; *Greenleaf* v. *Ill. Cent. R. R. Co.*, 29 Iowa, 14; *Huddlestone* v. *Lowell Machine Shop*, 106 Mass. 282; Wharton on Negligence, § 217 and cases cited.

On this matter of notice the court instructed the jury as follows:

" If the jury find from the evidence that the injury complained of was caused by the neglect of defendant after notice of defects in its road-bed, to make the necessary repairs, and that the plaintiff was not guilty of negligence at the time of the accident, then you should find for the plaintiff."

A professional man, versed in the force of legal phrases and the definition of legal terms, would understand that the term "negligence," as used in this instruction, would include the negligence of venturing with knowledge of the defects. He would understand that, while previous knowledge of a danger was not conclusive, it was a strong circumstance in the chain of evidence to establish negligence on the part of the appellee, and, unless some reasonable excuse was shown, would warrant the jury in finding negligence. But did the jury so understand it? This instruction does not recognize in terms the knowledge of the defective condition of the roadway upon the part of the appellee, and his continuance in the service, as in themselves *prima facie* negligence, or even as facts for them to consider in determining the question of his negligence. On the other hand, we are inclined to think that it led them to believe that the effect of the notice was to leave the plaintiff at liberty to continue the employment, notwithstanding his knowledge of the defective roadway, and tempt the dangers of the service at his master's risks, provided he was not in other respects negligent. At all events, it does not give the law applicable to the facts of the case in terms sufficiently plain and full as to advise them of the effect of notice, or the effect of knowledge of the defects by the plaintiff in case of notice. A party has the right to have the law applicable to his case fairly, clearly and distinctly stated in the instructions given to the jury. *C. B. & Q. R. R. Co.* v. *Payne*, 49 Ill. 500.

The fifth instruction is also erroneous.

"A railroad company is bound to keep their track in such repair as to *insure* the safety of all persons lawfully upon it, and this extends to servants of the company as well as passengers."

This is not the law. The rule, respecting the safe condition of the roadway, is not the same in the case of servants as in the case of passengers. A railroad company is not *prima facie* liable to any of its servants for injuries arising from defects in its rolling-stock or road-bed.

The company must use all reasonable precautions and care to secure the safety of its employees by keeping the roadway in repair. It cannot through want of watchfulness expose them to unreasonable risks in this respect, and escape liability, but the duty imposed is that of ordinary care. This ordinary care must be measured by the danger of the service, and proportioned to it. Considering the dangerous force which a railway company puts in motion, the term " ordinary care toward its employees " imposes, without doubt, a high degree of diligence in keeping the road and all its appliances in proper repair, but it neither warrants nor insures against defects. In this respect the instruction went too far. Shearman & Redfield on Negligence, § 92 ; 1 Redf. on Railways, 557 (10), § 131 ; Wood's Master and Servant, §§ 329, 345 ; *Ormand* v. *Holland*, E., B. & E. 102 ; *Hard* v. *Vermont, etc., R. R. Co.*, 32 Vt. 473 ; *Columbus, etc., R. R. Co.* v. *Webb*, 12 Ohio St. 475 ; *Mad River R. R. Co.* v. *Barbour*, 5 Ohio, 541 ; *Indianapolis, etc., R. R. Co.* v. *Love*, 10 Ind. 554 ; *Seaver* v. *Boston & Maine R. R. Co.*, 14 Gray, 466 ; *Warner* v. *Erie R. R. Co.*, 39 N. Y. 468.

We deem it unnecessary to notice the other assignments. The judgment is reversed, and the case remanded for further proceedings according to law.

*Reversed.*