## The Denver and Rio Grande Railroad Company v. McComas.

1. RAILROADS—CARE AND DILIGENCE REQUIRED.

As between a railroad company and its trainmen, it is bound to use ordinary care and reasonable prudence to provide a safe roadway as well as sufficient machinery.

2. SAME.

A brakeman on a railroad assumes the ordinary hazards which attend the employment.

3. SAME—BURDEN OF PROOF—ACCIDENT.

Proof of the happening of an accident on a railroad in which an employé was injured does not sustain the burden which is upon him to show that negligence on part of the company which is prerequisite to a recovery.

*Appeal from the District Court of Chaffee County.*

Messrs. WOLCOTT & VAILE and Mr. C. S. LIBBY, for appellant.

Mr. LEE CHAMPION and Mr. E. F. RICHARDSON, for appellee.

BISSELL, J., delivered the opinion of the court.

It is quite impossible to determine from the record whether our conclusion will enforce the fair measure of duty which the master owes to the servant, or permit the company to escape the liability which such obligation would justly impose. The failure to establish what is prerequisite to a recovery in this class of cases must reverse the judgment.

In May, 1891, the Denver and Rio Grande Company was operating its trains on that portion of the road which extends from Salida to Buena Vista. A few miles from Salida the road, in following the course of the Arkansas river, enters what is known as "Brown's Cañon," which is characterized, like all other gorges along that river, by rocky and precipitous bluffs,

which are a constant menace to the safety of railway travel. The gorge is narrow, the roadbed confined and subject to slides and rock falls, which endanger the safety of trains. Some two or three months prior to the accident the road had broadened its gauge from the narrow to the standard, and in doing this work had blasted some sections of the cañon to furnish space for the roadbed. At a point about twelve miles from Salida was a place known by the name of "Jackson's Curve," near Arena. At this point the rocks were precipitous and rugged, and at the exact place of the accident seemed to be some thirty or forty feet high, and from thence sloped gradually to the top of the mountain. When the blasting was done, the contractor sloped the bluff at the rate of about one in four, to provide as well as might be for the safety of trains. Wherever such work was done, the contractor went over the surface of the mountain, removed all loose formations and projecting rocks to prevent accidents. The road had been running for some two or three months after the widening of the gauge. On the day named a rock fell upon the track, the engine ran into it, and McComas, who was a brakeman on the train, was quite severely hurt. McComas was what is known as a "front brakeman," and rode in the engine on a board seat placed from the fireman's seat across to the boiler, whereby he faced the train and kept watch over his section of it while the train was in motion. Brakemen of this class are barred from the caboose on the rear of the train, and there is no other place where they can ride between stations in most seasons of the year. The rock which fell on the track seems to have been something like a cube, and of three or four feet either way in dimensions. The engine was derailed and McComas went over with it. Some other facts will be stated respecting this rock, but those matters will be reserved for the later discussion.

The general rules which determine the care and responsibilities and rights and privileges as between master and servant are tolerably well understood. There will be no effort to formulate or express this law with an exactitude which

will make it applicable to all cases of this description or to future controversies. The danger of attempting this thing is well understood. The course of judicial history·is marked as with milestones by the lamentable failures which usually characterize the efforts of judges who strive to express in rules and by definitions the principles which must control particular phases of legal controversies. The intellectual perception and ability to grasp principles and foresee the exceptions and the limits to a particular doctrine are given to none. Nothing is attainable but relative accuracy. Safe appliances and a safe way must be provided. Railroad companies are bound to use ordinary care and reasonable prudence to provide a safe roadway as well as sufficient machinery. The employé cannot by a lack of watchful ness and care be unduly exposed to risks in this particu lar. Of course, the care is measured by the danger which attends the service, though the employé is assumed to take the ordinary hazards which are incident to a dangerous employment. *Colo. Central R. R. Co. v. Ogden*, 3 Colo. 499; *Murray v. D. & R. G. R. Co.*, 11 Colo. 124; *Wilson v. The Denver, S. P. & Pac. R. R. Co.*, 7 Colo. 101; *Burlington & Colo. R. R. Co. v. Liehe*, 17 Colo. 280.

These rules are very simple, and in the present case their application is without the slightest difficulty. To entitle the plaintiff to recover, he was bound to show that the Railroad Company was negligent in providing a safe way. It must be conceded negligence was not established by proof of the accident. The happening of an accident does not establish negligence as against the company and in favor of the employé, whatever the rule may be in actions brought by injured passengers. It was not one of those peculiar accidents concerning which the Railroad Company has special knowledge, and where the burden of proof might be shifted when the evidence once established the occurrence. The continued operation of the railroad for several months after the gauge had been widened fairly demonstrated the use of ordinary care and prudence in its construction and in the

precautions taken to make the way safe. The impossibility to prevent the occasional falling of rocks is well understood. Railroads cannot be so constructed through mountainous countries, along the course of streams, in rocky gorges, as to be absolutely safe. The only thing which a company can do is to supervise the construction, see that there are no loose rocks in its immediate vicinity, and remove everything liable to fall. They are bound to adopt a careful system of inspection, through section gangs and track walkers, and exercise a careful and watchful supervision of the way. The plaintiff proved the general circumstances of the accident and offered testimony tending to show the size of the rock, its presence on the track, and indicated as near as might be the place from which the rock came. He showed the widening of the gauge and the blasting. The jury were then left to infer the company was negligent and careless in providing a safe way. The rock was three to four feet in dimensions in every direction, and a hole was said to be visible on the bluff, some twelve or fifteen feet from the roadbed, about the size of the rock. Nobody saw the rock fall, nor was there any satisfactory evidence produced to establish the place from which it came. Nobody took the trouble to go up and examine the hole, or make any measurements of it, or any examination wherefrom they could testify concerning the probable condition and situation of the rock prior to the time it fell on the track. By some of the witnesses the hole was said to be about the size of the rock; by others it was said to be about fifteen inches deep, although these same witnesses said it looked as though the rock came from it. Manifestly, if the hole had been examined and measured, it would have been a relatively easy matter to determine with reasonable certainty whether the rock came from that hole or from further up the mountain.

This was a very important matter in its bearing on the question of the negligence of the company. The witness who testified to the depth of the hole was evidently unable to speak with any sort of accuracy about it. He only ex-

amined it from the level of the track, and manifestly would
be unable to tell whether the hole was originally fifteen
inches deep or had lost some of its depth by the settling of
loose dirt and débris after the rock fell.     There was no evi-
dence to show the rock projected from the face of the bluff,
which would have been a matter of observation if it had pro-
jected twenty to thirty inches.    It is thus apparent the only
thing which the plaintiff did was to show there was a rock
on the track and a hole in the bluff from which it might
come.    All these things might easily be true, and yet the
company be guilty of no negligence in providing a safe way.
When the work of widening the bed was done, if the surface
of the bluff was carefully examined, and nothing loose was
left along its face, and if from time to time thereafter the
roadway was inspected by the section gang and track walkers,
and no evidences were discovered of loose rock, the company
discharged its duty to its employés in respect to this matter.
The defendant moved for a nonsuit on the conclusion of the
plaintiff's case.    The nonsuit should have been granted.
The plaintiff wholly failed to establish the negligence which
fastened a liability on the company.    The court denied the
motion, however, and the defendant went on with his case.
The plaintiff's case was not aided by the defendant's testi-
mony.    On the contrary, the company offered very substan-
tial proof of care in looking after the roadway and in the
examination and inspection of its various parts.    The con-
tractor who widened the way, and the section foreman under
whose special direction that section of the road was placed,
were produced, and gave abundant testimony as to the care
which the company took in supervising the condition of the
road.    Track walkers were employed, who went over that
section shortly prior to the falling of the rock, and the fore-
man and his assistant went over it constantly and took all
reasonable precautions to prevent such accidents.    This state-
ment very clearly demonstrates both the failure of the plain-
tiff to prove the company was negligent and the successful
effort of the company to establish the use of the requisite

care in the management and maintenance of a dangerous portion of their road. We are therefore compelled to conclude the company was not shown to be negligent, and, without further proof in this important and material direction, the plaintiff cannot recover.

The motion for a new trial was well based. The judgment should have been set aside and another hearing ordered.

There are some other errors discussed in the briefs of counsel which might necessitate some consideration and argument if the case had not gone off on this fundamental error. They are not likely to occur in the succeeding trial and will be left unnoticed.

The judgment will be set aside and the case reversed and remanded.

*Reversed.*