Thomson, J.
A freight train of the Denver & Rio Grande Railroad, upon which Jesse L. Maydole was a brakeman in the employ of the railroad company, while proceeding westwardly from Gunnison city, plunged into a stream, the bridge across which had been burned, with the result that Maydole lost his life. The accident occurred in the early morning of October 23, 1896. The wife of Maydole being dead, his children, Etta M., and Fern G., by their guardian, Frank B. Eells, brought this statutory action against the Denver & Rio Grande Railroad Company to recover damages for the loss of their father, alleging that his death was due to the negligence of the defendant. At the trial, when the plaintiff rested, on motion of the defendant, a nonsuit was adjudged, and the plaintiffs appealed.
Substantially, the evidence was as follows: The railroad track east of the bridge was very crooked, being a succession of curves, but the bridge was reached by a stretch of straight track about 300 feet in length. An engine and train of the defendant crossed the bridge between 8 and 9 o’clock on the night of the 22d, and. it was then sound. The number of the engine was 272, and the name of the engineer, Mona *451 han. When the bridge was reached by the train on which Maydole was brakeman, about 3:30 o’clock in the morning of the 23d, it was burned down, and the fire was out. A rain which had fallen had extinguished the fire. Prior to, and perhaps during 1892, the road was inspected by track walkers day and night; but sometime in or about the last mentioned year, night inspection was discontinued. Monahan, the engineer of the train which crossed the bridge between 8 and 9 o’clock, was interrogated concerning track walkers. The interrogatories, and his answers, were as follows :
“ Q. Do you know what system of inspection or track walking they had through the canon described at the time of this accident?
“ A. I cannot say as to what the system was at the time of the accident.
“ Q. What inspection was taking place at that time?
“ A. According to what I know — I don’t know — all I know I have been told. My understanding is that they sent a man over that track previous to any train over there through the day.
“ Q. Have you seen these inspectors ?
“A. Yes, sir.
“ Q. Did they send, so far as you know, night track walkers over the track ?
“ A. That I don’t know.
“ Q. Have you seen track walkers at the time or previous to this accident, at night ?
“ A. Not at that time I didn’t see any track walkers, but I have a number of times previous before.
“ Q. How long ago was it that you saw night track walkers ?
“ A. I seen track walkers that day, that afternoon.
“ Q. When ?
“ A. That afternoon, when I went by on the engine.”
We have given the examination of Mr. Monahan concerning track walkers thus fully, because his testimony is the *452 subject of some discussion by counsel. Our own opinion upon it will be expressed hereafter.
The plaintiff undertook to show that engine No. 272 was defective to the knowledge of the defendant, and that fire which fell from it in consequence of its defective condition, caused the destruction of the bridge; but the effort was a failure. While the engine was at one time out of order, it had been repaired; and when it crossed the bridge on the night of the 22d it was in good condition. No inference is to be drawn from the evidence that there was any connection whatever between the engine and the fire. But we think that the question, whether upon the evidence in this case, it was incumbent on the defendant to provide night track walkers over the portion of its line described in evidence, should have been submitted to the jury. It is the duty of a railroad corporation to know the condition of its track, so far as such condition can be known by the exercise of reasonable care and diligence; and it must be inspected with sufficient frequency to assure its safety. The rule is thus stated in Railway Co. v. Swett, 45 Ill. 197: “ It is the duty of railroad companies to keep their road and works and all portions of the track in such repair, and so watched and tended, as to insure the safety of all who may lawfully be upon them, whether passengers, or servants, or others.” See also R. R. Co. v. Ogden, 3 Colo. 499, Quayle v. Railroad Co., 63 Mo. 465, and Railroad Co. v. Macomas, 7 Colo. App. 121.
This bridge burned down between 9 o’clock at night, and 3:30 o’clock of the following morning. Night track walkers might have discovered the fire and warned the train in time for the avoidance of injury. The track on which the train proceeded was-very crooked and but little of it could be seen at once even in daylight. The fire which had consumed the bridge was extinguished, so that, in the darkness, even if the track ahead had been straight, there was nothing to indicate the disaster to the bridge. It seems to have been the judgment of the defendant that it was necessar}”- that the track should be inspected during the day; but, without any knowl *453 e'dge of the mysteries of railroad management, it occurs to us that the reasons which required day inspection would operate with much greater force at night, and we think that such is the logic of the facts of this very case.
Whether night track walkers in the locality of the accident were necessary, and whether the want of night inspection constituted negligence, were questions for the jury to answer. The evidence was sufficient to require the submission of those questions, and the refusal of the court to permit the jury to pass upon them was error. Railroad Co. v. Wilson, 12 Colo. 20.
It is suggested for the defendant that from the long time Maydole had been in the service of the defendant, he must have known that night track walkers had been withdrawn, and that by continuing in the service of the defendant after acquiring the knowledge, he assumed the risk of the accident which afterwards overtook him. There was no evidence, and we do not think there is any presumption, that he had any knowledge on the subject. But, conceding the fullest knowledge in him, we do not think, when we regard the nature of the fact which he knew, and the duties required of him in his employment, that his knowledge was necessarily a bar to his suit, or, at the very furthest, was anything more than a circumstance to be considered by the jury in connection with the other evidence. The alertness requisite to the proper discharge of his duties, would almost necessarily render him forgetful while he was engaged in his work, of anything he might have known concerning the track walkers; and, by the discontinuance of night inspection, he was not exposed to any certain danger. Snow v. Railroad Co., 8 Allen, 441; Plank v. Railroad Co., 60 N. Y. 607.
The statement of Monahan that he saw track walkers “ that afternoon ” when he “ went by on the engine, ” is held up to us by counsel as conclusive evidence that at the time of the accident there was night inspection of the track, because there was no direct proof that he went by, except between 8 and 9 o’clock at night, and that, therefore, it *454 must have been at that time that he saw the track walkers. Considering the whole. evidence together, Monahan’s included, it is reasonably clear that at the time of the accident there were no night track walkers on the portion of the line which embraced the bridge, and Mr. Monahan did not say that there were. He said he saw track walkers in the afternoon. The afternoon is part of the daj’, and it is evident from other portions of his testimony that he knew nothing of night track walkers after 1892. He said he saw track walkers as he passed by on his engine, but he 'fixed the time of his passage in the afternoon, so that it was not when he crossed the bridge at night that he saw them. He seems to have been running his train backwards and forwards between Gunnison city and Junction city, and it is inferable that he reached Gunnison city from Junction city that afternoon ; so that he saw the track walkers when his engine passed by on its way to Gunnison city. When it crossed the bridge at 8 or 9 o’clock at night it appears to have been going in the opposite direction, — that is, running from Gunnison city to Junction city. These are to some extent inferences, but they are legitimate. They are consistent with the evidence, and serve to explain how it was that the witness saw the track walkers in the afternoon. This case ought to have gone to the jury.
The judgment is reversed.

jReversed.