Wilson, P. J. It is unnecessary to review the evidence in detail, it being sufficient to say that it tended to prove all the material allegations of the plaintiff’s declaration, and hence if our view of the law applicable to the facts which the evidence tended to prove be correct, the court below erred in directing the jury to find for the defendants. It appears that the plaintiff was employed by the defendants to work on a planing machine in the defendants’ furniture manufactory, and at the time of his being employed he was instructed to do whatever the person who fed the machine directed him to do. The machine was driven by steam power, and consisted of rapidly revolving knives, which dressed the lumber as it passed under them between rollers. The feeder who controlled the machine stood in front and passed the lumber through, while the plaintiff stood in the rear to receive it as it came through after having passed under the knives. On the day of the occurrence a sliver or chip became lodged between the irons of the machine near the revolving knives in such a way as to obstruct the operation of the machine. The feeder, without stopping the machine, directed the plaintiff to take the sliver out, which in obedience to the order he attempted to do, but did not succeed, and he informed the feeder that he could not get it out, whereupon the feeder came around to where the plaintiff was and ordered him peremptorily to pull the sliver out, in attempting to do which the plaintiff’s hand was caught by the knives and cut off. The machine could have been easily stopped by merely casting off the belt by which it was driven onto a loose wheel or pulley. It further appeared that like obstructions to that which the plaintiff was required to remove were of frequent occurrence, and that the feeders of other similar machines in the same establishment were in the habit of stopping the machines by throwing off the belt whenever it became necessary to remove one of these obstructions. The knives were so covered as not to be seen when the machine was running, thus rendering it exceedingly hazardous to insert the hands near the knives when revolving. The plaintiff had worked in a planing mill before, but its machines were larger and differently constructed from the machine in question. The act of the feeder of the machine in coercing a boy of fourteen to attempt the removal of an obstruction in the manner described, without stopping the machine, was one of gross carelessness, not to say criminal negligence, and it resulted in making the plaintiff a cripple for life. Upon the facts, then, as shown by the plaintiff’s evidence, we are of opinion, (1) that under the circumstances, in view of the plaintiff’s age, and the positive order of the feeder to remove the obstruction, no want of ordinary care is imputable to the plaintiff; (2) that the feeder was guilty of gross negligence. It remains, therefore, only to consider the legal aspect of the case. The theory of the counsel for the defendant, and which seems to have been adopted by the court below, is that the feeder of the machine and the plaintiff stood in the relation of fellow servants of a common master, in the same line of employment, and that consequently the doctrine of respondeat superior does not apply. Fortunately for us the difficulties that have heretofore beset attempts to extract from the numerous adjudicated cases definite and settled rules and principles applicable to cases of this nature, have been largely diminished by a recent decision of our Supreme Court in the case of Chicago & Alton R. R. Co. v. May, 108 Ill. 288. The present case, in all its essential features, is entirely similar to that, and we need, therefore, to do little more than refer to the principles enunciated by Mr. Justice Multey, who wrote the majority opinion in that case. He says: “The true rule on the subject, as we understand it, is this: The mere fact that one of a number of servants who are in the habit of working together in the same line of employment, for a common master, lias power to control and direct the actions of the others with respect to such employment, will not of itself render the master liable for the negligence of the governing servant, resulting in an injury to one of the others, without regard to other circumstances. On the other hand the mere fact that the servant exercising such authority, sometimes or generally labors with the others as a common hand, will not of itself exonerate the master from liability for the former’s negligence. Every case, in this respect, must depend upon its own circumstances. If the negligence complained of consists of some act done or omitted by one having such authority, which relates to his duties as co-laborer with those under his control, and which might just as readily happen with one of them having no such authority, the common master will not be liable. For instance, if the section boss of a railway company, while working with his squad of men on the company’s road, should negligently strike or injure one of them, causing his death, the company would not be liable; but when the negligent act complained of arises out of, and is the direct result of the exercise of the authority conferred upon him by the master over his co-laborers, the master will be liable. In such a case he is not a fellow servant of those under his charge, with respect to such power, for no one but himself, in the case supposed, is clothed with authority to command the others. "x" * * In exercising this power he does not stand upon the same plane with those under his control. His position is one of superiority. When he gives an order within the scope of his authority, if not manifestly unreasonable, those under his charge are bound to obey under peril of losing their situations, and such commands are, in contemplation of law, the commands of the company, and hence it is held responsible for the consequences.” These views are applicable to, and are decisive of, the present case. The plaintiff was placed by the defendants under the immediate control and direction of the person who had charge of the running of the planing machine. While they were fellow servants of a common master, they did not stand upon an equal footing. The feeder was, by express appointment of the defendants, made the superior of the two. As to the control and direction of the plaintiff, he was the alter ego of the defendants. His orders were their orders, and it is immaterial whether he had authority over one man or a gang of men. Some stress was laid by the defendants’ counsel upon the fact that the feeder had no power to employ and discharge hands. That circumstance furnishes no test as to the status of an employe. It is a circumstance proper to be considered, like any other relevant evidence, in passing upon the question, but is by no means determinative. Here the proof of the feeder’s authority was express, and did not need corroborative evidence. It is to be observed that the plaintiff’s injury was not the result of a mere careless act done by the feeder in performing his work as a co-laborer or fellow servant, but it was the direct result of a negligent and improper exercise of his power and authority over the plaintiff, in giving an order which no one, in the exercise of ordinary prudence, would have given. Being of opinion that the plaintiff’s evidence made a prima, faci& case, we think the court below erred in directing the jury to find for the defendants. The judgment is reversed and the cause remanded for a new trial. ¡Reversed and remanded.