THE DEEP MINING AND DRAINAGE COMPANY v.
FITZGERALD.

1. CONTRIBUTORY NEGLIGENCE.

In an action based on negligence, and where one of the defenses is contributory negligence, the jury should be instructed that when the plaintiff omits to do something for his own safety which he should have done, the nonperformance of which approximately contributed to the injury, this failure to act will defeat a recovery as much as if some positive act of the plaintiff approximately contributed to the injury.

2. INSTRUCTIONS—MISLEADING—ERRONEOUS.

An instruction not applicable to the facts, the effect of which was probably confusing and misleading to the jury, constitutes prejudicial error.

3. EMPLOYER AND EMPLOYÉ—FELLOW SERVANT.

The master is liable for the acts of the vice principal done within the scope of his employment, and such as properly devolve upon the master in his general duty to his servants, but not for such acts as relate to the common employment and are on a level with the acts of a fellow laborer, except those done by the vice principal against the reasonable objection of the injured servant.

4. MEASURE OF DAMAGES—EXCESSIVE DAMAGES.

Where the jury find for the plaintiff in an action for damages for injuries sustained, they should, in the exercise of a reasonable and sound judgment, give him reasonable compensation for the consequences of the injuries and no more. A verdict for $37,500 as damages for injuries resulting in the loss of sight is excessive.

*Error to the District Court of Pitkin County.*

THIS was an action brought by the defendant in error to recover damages for personal injuries sustained by reason of the alleged negligence of the plaintiff in error. In substance the complaint alleges that the defendant was a corporation engaged in the business of mining in the county of Pitkin, and state of Colorado, and the particular work in which it was engaged at the time of the accident was the sinking of what was known as the "deep shaft" on the Homestake lode; that the plaintiff was at the time employed by the defendant

as a miner to work, with other miners, under the direction of defendant at the bottom of the said shaft; that one James Thomas was at that time in charge of the work on behalf of the defendant, and was employed by it as its agent and representative to conduct and control the working and sinking of said shaft, and was acting in pursuance of said employment at the time of the injury; that Thomas was vested with full power over said work and over the miners employed thereat, with the right to direct and control the action of the miners and to discharge them for violation or disregard of his directions, and generally to hire and discharge men in the prosecution of said work; that while engaged in the sinking of the shaft Thomas commanded plaintiff to clean out a "missed hole,"—that is, a hole which had been drilled in the shaft, and in which had been placed a cartridge consisting of dynamite and other explosive material, connected with a cap and fuse, which had been lighted, but the fire of which had gone out and failed to light the explosive; that in part plaintiff did this, but refused to clean it out beyond a certain depth, giving as his reason for disobeying that he thought the hole was deep enough; that thereupon Thomas himself, against the protest of the plaintiff, took up the unfinished work, which he prosecuted in so negligent a manner and with such force and violence that he thereby caused an explosion, which resulted in the loss of plaintiff's eyesight, and deprived him of the power of earning a living. A further allegation as to negligence is "that said injuries were caused by the act and negligence of the defendant and its agent as principal and representative as aforesaid, without negligence on the part of the plaintiff."

An answer was filed to this complaint, consisting of several defenses, one being a general denial; also that said Thomas was a fellow servant of the plaintiff, engaged in the same kind of employment; that plaintiff's own negligence was the cause of the injury; and that the plaintiff had equal means of knowledge with the defendant as to whether the act which it was alleged caused the injury was dangerous

and unsafe, and yet nevertheless continued in the service of the defendant, and by his own act caused the injury.

To this answer a replication was filed, and upon the issues thus joined trial was had before a court and jury, resulting in a verdict for the plaintiff in the sum of $37,500. Upon this verdict, after the overruling of a motion for a new trial interposed by defendant, the court entered judgment, and to reverse this judgment the defendant prosecutes its writ of error.

A large number of errors have been assigned by the plaintiff in error, but in view of the conclusion which we have reached, it will not be necessary to consider all of them. The main errors relied upon are that the facts stated in the complaint are not sufficient to constitute a cause of action, and the evidence is insufficient to sustain the verdict; that the court should have granted a nonsuit at the close of plaintiff's testimony; that the court erred in its instructions to the jury upon various grounds (which grounds will be stated more specifically hereafter); and that the verdict of the jury is excessive and appears to have been given under the influence of passion and prejudice.

A brief statement of the evidence, as well as the allegations of the complaint, will serve to elucidate the legal questions involved. That the testimony was contradictory as to nearly, if not quite, every material point, is conceded, but it tended generally to show the following:

Thomas was a foreman of the defendant company, intrusted by it with the superintendence of the sinking of the deep shaft upon the Homestake lode. Of this work he had entire charge. To him the miners employed therein looked for directions; by him they were employed and discharged; and, in general, he represented his principal (the defendant company) in all things in this particular department of its general enterprise.

It was one of the duties of plaintiff, whenever so ordered by Thomas, to clean out missed holes, and prepare them for recharging with dynamite. To the work of cleaning out

this particular hole Thomas had assigned plaintiff on the day in question. The latter had obeyed the order to the extent of cleaning it out as deep as he thought it should be made, and then ceased from the work. When Thomas descended into the shaft to ascertain if compliance had been had with his instructions, the plaintiff informed him that the hole was deep enough for the purpose in view. Thomas thereupon took the sand pump and inserted it in the hole, and replied that it ought to be sunk deeper, and handing the instrument to plaintiff, ordered him to finish the work. The plaintiff refused to obey, assigning as his sole reason therefor that the work, in his judgment, had been sufficiently performed, not that the further prosecution of it was attended with any greater danger than that incident to the antecedent work.

Thomas then, as was his province, determining that for safe recharging the sinking should be further prosecuted, took from the plaintiff the sand pump, and proceeded with the work. Whilst engaged thereat, he ordered plaintiff to throw water into the hole. The plaintiff scooped up from the bottom of the shaft with his shovel water that was standing therein, and threw it into the hole, when Thomas remarked that it was water, not dirt, that he wanted. Thereupon the plaintiff, evidently concluding that there was dirt mixed with the water standing in the shaft, reached for a bucket containing drinking water, and threw water from it into the hole. Almost immediately occurred the explosion which caused plaintiff's injuries.

Up to the very last, plaintiff says that Thomas was working the sand pump gently, and it was only when he was about to throw water from the pail that, according to his statement, Thomas began churning the pump into the hole in a violent manner, which, he claims, caused the explosion.

From this brief statement, as well as from the allegations of the complaint upon which plaintiff must rely for a recovery, it will be seen that if there was any negligence, it was that Thomas improperly worked the sand pump, and not that the use of that instrument for the purpose was, of itself, neg-

ligence. This act by which the injury was occasioned was
not the result of an act done by the plaintiff as a servant
under the order of a superior. The throwing of the water
is not even alleged or claimed to have contributed to the
injury; and that act of the plaintiff was the only one con-
nected with the accident done by him in obedience to orders.
The act done by Thomas was necessitated by the refusal of
Fitzgerald to do that which he admits was his duty, as a
miner, to do whenever Thomas gave the order, and plaintiff,
notwithstanding in his complaint he avers it, did not offer
any objection to the assistance of his foreman.

Although it is so contended by the plaintiff, there is no
proper evidence that it was a part of the duty of Thomas to
assist in the manual work of cleaning out missed holes; but,
on the contrary, as asserted by the plaintiff himself, it was
the duty of the plaintiff to do this, whenever Thomas so
directed.

Mr. C. W. FRANKLIN and Messrs. THOMAS, BRYANT &
LEE, for plaintiff in error.

Mr. W. W. COOLEY and Mr. W. O'BRIEN, for defendant
in error.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

One of the errors assigned is to the giving by the court of
the fourth instruction, which purports to state the law of
contributory negligence. In the third instruction the court
had defined negligence to consist in " performing some act, or
omitting to perform some act, which an ordinarily prudent
and careful man would not perform, or omit to perform,
under all the circumstances of a particular case."

In instruction No. 4 the jury were told that if they found
from the evidence that the injuries were caused through the
negligence of Thomas, and that Thomas stood in such rela-
tion to the defendant as that his negligence was the negli-

gence of the defendant, then their verdict should be in favor of the plaintiff, *unless* they also found that the plaintiff *committed* some act which proximately caused the injury, and but for which act the injury would not have occurred.

This instruction did not go far enough. It conflicts, as to one element, with the preceding one, and we do not find that it was elsewhere in the charge clearly supplemented, or corrected. The issue was squarely raised, and the jury should have been instructed that an *omission* by the plaintiff to perform some act which, if performed, would have protected him from injury, would defeat a recovery by the plaintiff just as much as if the latter had *committed* some act which proximately caused the injury, and but for which it would not have occurred.

There was given to the jury an instruction, not numbered, wherein they were, in substance, told that if the master, or boss, orders the servant into a situation of danger, and commands him to do certain things, and he obeys and is injured, the duty of the servant being obedience, the law will not deny a servant so acting in obedience to command a remedy against the master on the ground of contributory negligence; "unless the danger was so glaring that no prudent man would have entered into it; * * * and where an employé is suddenly commanded by his employer to do a particular act, and exhorted to diligence therein, he cannot be required to exercise the same degree of care in guarding against accidents as when he has more abundant time for observation and reflection."

There was no evidence before the jury which justified the giving of such an instruction. It is altogether inapplicable to the facts of this case, and, whether right or wrong, if given when the facts called for it, its only effect was probably to confuse the minds of the jury or mislead them. A somewhat similar instruction, where the same was inapplicable to the facts, was held by this court in *Burlington & Colo. R. R. Co. v. Liehe*, 17 Colo. 280, prejudicial error; and equally grave was the error in giving the instruction in this case.

In his complaint, by alleging that he protested against Thomas' engaging in the work which it was a part of his own duty to perform, plaintiff seeks to bring his case within the rule announced in Shearman & Redfield on Negligence (4th ed.) in the last sentence of section 233. This naturally brings us to an examination of the contention of the plaintiff in error that for the act of Thomas—assuming it was negligence that caused the injury—the defendant is not liable. The discussion of this point, and its determination, will dispose of many of the errors assigned, not only as to the ruling of the court upon the motion for nonsuit, but as to a number of the instructions, and as to the sufficiency of the evidence.

While the complaint brings the case within the rule announced, the evidence does not support the allegations of the pleading. As has already been said, the plaintiff did not protest or object to the further sinking of the hole by Thomas, and it was conceded that Thomas was a competent miner. Plaintiff merely objected to doing so himself. He anticipated no danger therefrom, and was actuated by no fear of its result. The injury was caused, not as the result of an act done by plaintiff in obedience to orders, but by the negligent doing by Thomas of a proper act, admittedly within the line of duty of the plaintiff, and occasioned by the refusal of the latter to obey orders.

To reconcile the conflicting decisions upon the liability of a master to a servant injured by the negligence of another servant would be a task, not only beyond the power of this court satisfactorily to perform, but one which, in the inextricable confusion resulting from the various authorities, it would be well nigh impossible, as we think, and as has been often said by eminent authorities, for any court to accomplish.

The so-called English rule, adopted in Massachusetts, New York, Maine, Pennsylvania, Indiana, Wisconsin, and some other states, if applied to the facts of this case, would exempt the defendant from liability, because, under such

rule, Thomas would be merely a fellow servant of the plaintiff.

Under the so-called American rule, which is the one adopted in this state, and declared in Ohio, Connecticut, Virginia, Kentucky, Missouri, Illinois, Nebraska, Kansas, California, and other states, Thomas would be considered a vice principal of the master, for whose negligence, within the scope of his employment, the master would be liable.

The authors of Shearman & Redfield on Negligence, who are strong advocates of the American rule, at section 233 of the fourth edition of their work, say:

"There are certain principles affecting the liability of a master, which are equally applicable, whether the American or English rule is adopted, and whether the agent, for whose negligence he is responsible to servants, is called a manager or a vice principal. In either case, the master is responsible for all the acts or defaults of the agents in his capacity as a manager, or 'vice principal,' and for no others. On the one hand, the master is responsible, not only for the negligence of such an agent in selecting servants, selecting or inspecting materials, implements, etc., and giving orders which the servants are bound to obey, * * * but in short for every act which he does, that would naturally fall within the province of a master personally conducting the business, and for every omission of an act which it would have been the duty of the master, if personally present, to do. On the other hand, the master is not responsible for the negligence of such an agent in the performance of acts which are in no sense part of a master's work and are precisely upon a level with the work of the other servants. When the manager or vice principal undertakes work in simple coöperation with other servants, and upon precisely the same footing with them, he becomes, for the time being, a mere fellow servant with them, acting as such. Thus, for example, a conductor, while acting as such, in starting or delaying the train, in warning or failing to warn the other train hands, or in any other respect performing the usual duties of a conductor, is not,

under the American rule, a fellow servant with a brakeman on the same train. But when he offers to assist the brakeman in handling his brakes or in coupling cars, he acts only as a fellow servant; such work being no part of the duty of a conductor, as such. *If, in such a case, the inferior servant should distinctly object, however guardedly, to the risk involved in such assistance, the common master should be held liable, in case the superior servant insisted on taking part in the work, since his superior authority would enable him to overrule the objection, and the inferior servant could not be expected to persist in it.*"

It is upon that portion of the foregoing section italicized by us that plaintiff rests his case. We do not find that any of the authorities cited contain this statement, and evidently it is a principle formulated by the authors which, in their judgment, is within the reasoning of the courts.

With the further qualification, probably implied, that such objection of the servant shall be a reasonable one, we think the doctrine sound. Testing the case at bar by this rule, it clearly is outside its provisions, for there was no objection at all by the plaintiff to the participation in the work by Thomas; so, as to this phase of the case, the liability of the master depends upon whether or not he is to be held liable for acts of his vice principal on a level with the acts of a colaborer. Assuming that Thomas was a vice principal of the defendant, and that the jury were warranted in so finding under proper instructions of the court,—which, under the decisions in *D., S. P. &P. R. R. Co. v. Driscoll*, 12 Colo. 520, and *Colo. Midland Ry. Co. v. O'Brien*, 16 Colo. 219, and *Lantry v. Silverman*, 1 Colo. App. 404, would be justifiable,—and further assuming that his negligence caused the injury, the question again is, can the defendant be held liable?

If the rule as laid down by Shearman & Redfield, *supra*, is to be followed, it exempts the master from liability. To the same effect also is *C. & A. R. R. Co. v. May*, 108 Ill. 288, wherein the court uses this language:

" If the negligence complained of [that is, the negligence

of the vice principal] consists of some act done or omitted by one having such authority, which relates to his duties as a colaborer with those under his control, and which might just as readily have happened with one of them having no such authority, the common master will not be liable. For instance, if the section boss of a railway company, while working with his squad of men on the company's road, should negligently strike or otherwise injure one of them, causing his death, the company would not be liable; but when the negligent act complained of arises out of and is the direct result of the exercise of the authority conferred upon him by the master over his colaborers, the master will be liable. In such case he is not the fellow servant of those under his charge, with respect to the exercise of such power, for no one but himself, in the case supposed, is clothed with authority to command the others."

The court further said:

" It is believed, moreover, that the test here suggested, and recognized in many of the cases, will reconcile many of the apparently conflicting decisions of the courts of this country which have declined to follow the English rule on this subject, and the principle, though not formally announced heretofore, is the logical result of our own adjudications." *Fanter v. Clark*, 15 Ill. App. 470; Wood's Law of Master & Servant (2d ed.), sec. 438.

See, also, *Crispin v. Babbitt*, 81 N. Y. 516, wherein the court says that the law as applicable to a case of this kind should be given to the effect that in any acts or duties performed by a vice principal other than those properly pertaining to the duty which the master owes to his servants in and about the defendant's works or business at said works, he is not to be regarded as the defendant's representative, but as an employé or servant of defendant's, and a fellow servant of the plaintiff.

See, also, *McCosker v. L. I. R. R. Co.*, 84 N. Y. 77, in which the court says: "The yard master, through whose negligence the injury occurred, must be deemed to have been

a fellow servant of the deceased as to all acts done within the range of the common employment, except such as were done in the performance of some duty which the master owed to his servants." *Hussey v. Coger*, 20 N. E. Rep. 558.

There are, however, decisions to the contrary, and which would hold the master liable for any acts done by the vice principal, whether they were such as relate generally to the duties which the master owes to his servants, or whether the acts be merely on a level with those of a fellow servant. These cases are : *Sweeney v. Gulf C. & F. S. Ry. Co.*, 19 S. W. Rep. (Tex.) 555 ; *The Berea Stone Co. v. Kraft*, 31 Ohio St. 287 ; *Gormley v. Vulcan Iron Works*, 61 Mo. 492.

The better rule, as we extract it from the best reasoned cases, is that for the acts of the vice principal done within the scope of his employment, and such as properly devolve upon the master in his general duty to his servants, the master is liable ; while for all such acts as relate to the common employment, and are on a level with the acts of the fellow laborer,—except such acts done by the vice principal against the reasonable objection of the injured servant,—the master is not responsible. In other words, the test of liability is the character of the act rather than the relative rank of the servants. Tested by this rule, the instructions of the court Nos. 2, 5 and 6 are wrong, and although in No. 18 was correctly given the test for determining the general relation of Thomas to defendant, yet, in so far as it may be considered as stating the true test for determining the liability of defendant for the particular act of Thomas that caused the injury, it conflicts with Nos. 2, 5 and 6 upon this phase of the case, and with the rule we herein lay down. The court should have given to the jury those instructions asked by defendant and refused, which embody this rule. This rule is not inconsistent with the doctrine of the *Driscoll* and other Colorado cases, *supra*, but it is in harmony therewith, and the logical result of those adjudications.

The last point made, though not necessary to be decided, is that the verdict for $37,500 was the result of passion and

prejudice upon the part of the jury, which, in a degree, was the result of the rule for the measure of damages given them by the court.

In a case of this kind, the true rule, however expressed, is that the jury should, in the exercise of a reasonable and sound judgment, give to the plaintiff reasonable compensation, and no more, for the consequences of the injuries, and necessarily the amount is largely discretionary with the jury. It is true, we do not find that the instruction seriously violates any well established principle, but we think that, under the circumstances of the case, the court should more clearly have laid down the rule to the jury based on such compensation, and that no attempt should be made to ascertain and render a money equivalent for the priceless sense of eyesight, which the jury may have supposed they might do by the use of the words " pecuniarily compensate him for such injuries."

While we would not be disposed to reverse this case because of any vice in this particular instruction,—especially as the defendant tendered no instruction upon this branch of the case,—still we think that, were there no other error in the case, we could not sustain the verdict here, because, by comparison with verdicts of juries in many other cases of like nature, it is not only much larger than any that has been called to our attention, but the entire record satisfies us, considering the nature of the instructions given, that the jury were influenced by passion or prejudice, or by some motive other than the desire to give to the defendant merely a reasonable compensation. It is no answer to this to say that no man would be willing to lose his eyesight for the amount of the verdict rendered in this case, because that is no proper criterion for the measure of damages in a case of this sort, and all the money in the world, if offered, would be no inducement to a sane person to part voluntarily with this " priceless gift to man."

An instructive case, in harmony with our view, wherein a large number of authorities are reviewed, is *L. & N. R. R. Co. v. Fox*, 11 Bush, 495.

Distressing and painful as were the plaintiff's injuries, and attended by consequences so permanently disastrous to him, their simple recital before the jury unavoidably aroused the sentiment of pity that every man possesses, and strongly appealed to their kindly nature. It therefore behooves the trial court, in such a case, to keep within proper bounds the deliberations of the jury. However much we are compelled to sympathize with the plaintiff in his sore distress, we would be recreant to our sense of duty were we to shrink from expressing our disapproval of the excessive verdict returned in this case.

For the foregoing reasons, the judgment is reversed and the cause remanded for further proceedings in conformity with this opinion.

*Reversed.*