THE LAST CHANCE MINING AND MILLING COMPANY v. AMES.

1. EMPLOYER AND EMPLOYÉ—NEGLIGENCE.

An employé who voluntarily remains in the service after having acquired knowledge of defects in the machinery and appliances used in connection with the work cannot recover damages for injuries caused by the defects of which he had knowledge previous to the accident.

2. SAME—CONTRIBUTORY NEGLIGENCE.

If the injured party might by the exercise of ordinary care under the circumstances have avoided the consequence of the defendant's negligence, he cannot recover.

3. WITNESSES—FALSUS IN UNO, FALSUS IN OMNIBUS.

An instruction informing the jury that if they believe from the evidence that any witness has testified falsely with reference to a material fact they may disregard the entire testimony of such witness, except as the same may be corroborated by other evidence worthy of belief, is erroneous. It is only where a witness has wilfully and corruptly sworn falsely that the doctrine attempted to be stated is applicable.

4. EMPLOYER AND EMPLOYÉ—NEGLIGENCE.

As between employer and employé, the former is required to exercise ordinary care in furnishing safe machinery and appliances for the business in which they are engaged. An instruction to the effect that the care should be such as an ordinarily prudent person would exercise having reference to his own safety " and the safety of those nearest and dearest to him," requires more than the law demands, and should not have been given.

*Appeal from the District Court of Mineral County.*

ELLA E. AMES, as the surviving wife of Fred Ames, instituted this action to recover damages on account of the death of her husband, alleged to have been caused by the

negligence of the defendant company. In its answer the Mining Company denied the charge of negligence, and alleged that the death of plaintiff's husband was caused by his own lack of care. On the issues thus raised there was a trial before a jury, which found for the plaintiff in the sum of five thousand dollars, and upon this verdict the court entered judgment, to reverse which the defendant has appealed to this court.

The plaintiff's husband was employed as a trammer to work in the fourth level of defendant's mine. The company was operating this mine by means of a shaft, about fourteen feet wide, which was divided into three compartments, substantially equal in dimensions, the north and south compartments of which were used as skip or car ways, and the middle one as a manway. In sinking this shaft the foot wall of the vein was followed, and for the first seventy feet the pitch of the shaft ran at an incline from the horizontal of about eighty degrees; for the next hundred feet about sixty-three degrees; and for the residue of the distance, about fifty degrees. The course of the shaft, as it was first constructed, slightly inclined to the right or north from a perpendicular plane drawn through a direct east and west line, but was afterwards changed so that it was substantially straight.

The shaft was cribbed, and in the center of the north skip compartment, in which the accident occurred, was laid a track upon which the skip was operated. The track was about three feet, two inches wide. The skip or car which was used for hauling up ore and lowering and raising the men as they went to their work and departed from the mine ran upon this track, and is a box of iron, rectangular in form, with the exception that at its upper end, instead of being square, it is sloping. The bottom of the skip is five and a half feet in length, and the top three and a half feet in length, the height two feet and a half, and the width two feet, ten inches. The skip runs upon four wheels, one pair about six inches from the lower end, and the front pair about three and a half feet from the lower end. At or near its lower

end is fastened a bail which runs up at each side, passing over the front of the skip, and to the center of the bail is fastened a cable, by means of which the skip is raised and lowered. On this bail, near the front of the skip, shoes are fastened, one on each side, which run upon the guide rails, fastened to center pieces or uprights, and the object of this contrivance is for safety in checking the fall of the skip in case of a break or sudden slacking of the cable.

The specific negligence charged against the defendant is that it carelessly and unskillfully constructed and maintained this shaft and track, and the other appliances connected therewith, so that they were dangerous, unsafe, and unfit for use; that the track was unlevel and uneven, the south rail being lower than the north one; that there were depressions in the track; that the shaft was not straight, but winding, so that the track was curved, and that the guides upon which the bail of the car rested were of imperfect material and unsafe in strength for the purpose required; and by reason of such negligent acts it is alleged that, on November 5, 1893, while the plaintiff's husband was being raised from the fourth level of the mine, in which he was working, the skip upon which he was being hoisted left the track, and one of the guides to the skip broke, and deceased was thereby forced between the skip and one of the posts projecting into the shaft from the partition of the compartment, and was killed.

The specific act of negligence attributed to the deceased by the defendant is that he, with full knowledge of the danger, voluntarily got upon and rode in this skip at a time when there were twelve men therein, and that the skip so overloaded was manifestly dangerous even to a casual observer, and by reason of such overloading the skip left the track, and the injury thereby resulted.

There was evidence tending to establish plaintiff's cause of action, as well as to substantiate the affirmative defense of contributory negligence interposed by the defendant.

Messrs. WOLCOTT & VAILE and Mr. W. W. FIELD, for appellant.

Messrs. CAVANAGH & THOMAS, Mr. M. S. BEAL and Messrs. ROGERS, CUTHBERT & ELLIS, for appellee.

MR. JUSTICE CAMPBELL delivered the opinion of the court.

If we should concede, as defendant claims, that this record leaves it somewhat uncertain as to what was the actual cause of this injury, nevertheless, as the evidence was conflicting, we would not be disposed to reverse the judgment on the ground of the insufficiency of the evidence. Some of the rulings of the trial court complained of, though technically erroneous, might be upheld as not being prejudicial; but there are others which cannot be sustained without overruling previous well-considered cases in this court, and other courts of last resort.

Of its own motion, the court, in the nature of a general charge, instructed the jury as to the duty that rested upon the defendant, as well as the law pertaining to the contributory negligence of the deceased. This was followed by a series of instructions submitted by the plaintiff, and some asked by the defendant, while other instructions requested by the defendant were refused.

There was evidence tending to show that one of the rules of the mine, notice of which had been given to all of the employés, including Ames, was that but six men at a time should ride on the skip, and that, on this occasion, twelve men were riding, deceased being the last but one to get on. The 13th instruction, given at the request of the plaintiff, informed the jury that if they believed that the skip tender of the mine just previous to the accident ordered the men who were on the skip at the time Ames was killed to ride thereon, and Ames complied with the order, then he was not guilty of contributory negligence, provided it was one of the skip tender's duties to prevent more than six men from riding in the skip at one time.

This instruction conflicts with a previous paragraph of the general charge given by the court of its own motion. Under

the facts of this case it should have been qualified by including the statement that Ames was bound to exercise ordinary care and caution, whether or not the rule existed, even though he was ordered by the skip tender to ride on the skip; provided, also, it was, to an ordinarily careful man, manifestly and obviously perilous for so many men to ride on the skip at the same time.   There was no emergency calling for sudden action upon his part, which, in some circumstances, might excuse him for complying with the order of the master, even though such compliance was attended with danger.

The 7th instruction, asked by the defendant and refused by the court, states the law applicable to a case where the injured party voluntarily remains in the service of his employer after knowledge of defects in the machinery or appliances which caused the injury.   It should have been given, and its refusal was error.   *B. & C. R. R. v. Liehe*, 17 Colo. 280; *Denver Tramway Co. v. Nesbit*, 22 Colo. 408.

The 8th instruction, asked by the defendant and refused by the court, in substance is that if the injured party by the exercise of ordinary care under the circumstances might have avoided the consequence of the defendant's negligence, but did not, then the case is one of mutual fault, which precludes a recovery.   This ruling was error.

We do not find that the substance of either of these instructions, which were refused by the court, was given in any of the instructions by the court of its own motion, but, on the contrary, in so far as there was an attempt to instruct upon these points, the law was not correctly given.

Plaintiff introduced evidence tending to impeach the defendant's witness Crawford by showing that previous to the trial he made statements contradictory of his testimony as to the extent of the depression of the south rail below the level of the north rail of the track.   The alleged inconsistency of the two statements the witness endeavored to explain by saying that his former statement was based on casual observation only, while his testimony was predicated upon an actual measurement subsequently made.   As applicable to this sit-

uation, the court, at the instance of the plaintiff, gave an
instruction, numbered 14. It informed the jury that if they
believed from the evidence that any witness has "testified
falsely, with reference to material fact, the jury may disre-
gard the entire evidence of such witness, except as the same
may be corroborated by other evidence worthy of belief."
The jury is not at liberty to disregard the entire testimony of
a witness merely because he has sworn falsely as to one mate-
rial fact. If he has sworn falsely as the result of inadvert-
ence, honest mistake, from imperfect memory, or through a
misunderstanding, as, in this instance, it was claimed, no
such consequences should attach to the rest of his testimony.
It is only where the witness has wilfully or corruptly sworn
falsely to a material fact that the doctrine attempted to be
laid down in this instruction is applicable, and this element
should have been added. It was error to give it as it went
to the jury. *Gottlieb v. Hartman*, 3 Colo. 53.

In defining the degree of care which the defendant com-
pany must exercise in furnishing safe machinery and appli-
ances, the court instructed the jury that it must be such care
as an ordinarily prudent man would exercise having regard
for his own safety "and the safety of those nearest and dear-
est to him." We think the clause quoted should not have
been added, as its natural effect would be to impress upon
the minds of the jury that the care must be higher and
greater than ordinary care. It might well be that a man
would exercise the highest possible degree of care to protect
his wife and children from harm, and yet this degree of care
is more than the law exacts of him in such a case as the one
at bar. We find no authorities, and are cited to none, that
impose a duty enjoined by this language. *Wells v. Coe*,
9 Colo. 159; *C. C. R. R. Co. v. Ogden*, 3 Colo. 499; *Grant
v. Varney*, 21 Colo. 329.

Over the defendant's objection, the court permitted the
plaintiff to introduce evidence as to defects in the track and
guide rails below the fourth level in the north compartment,
and as to like defects in the south compartment. Had this

evidence been confined to such defects, if any, as necessarily resulted from the pitch and course of the shaft, its admission might not be error, because, from the construction of the shaft, defects of this character, if any, would probably be found in all three of the compartments and at different places therein. But in the absence of any claim that the track and guide rails generally were improperly constructed and maintained, evidence as to defects therein below the fourth level in the north compartment, or in any portion of the south compartment, resulting from the ordinary wear and tear and from improper maintenance, certainly would not be material as shedding light upon the condition of the shaft or track or skip or guide rails at the place where the accident occurred. Such evidence relates to collateral matters, and inevitably tends to mislead and confuse the minds of the jury. *Marr v. Wetzel*, 3 Colo. 2.

There is no serious argument made in support of the rulings just discussed. Indeed, counsel for appellee seeks to escape the consequences thereof by insisting that no proper exceptions were saved, that the instructions were not embodied in the bill of exceptions, and that the errors are not particularly specified. But an examination of the record discloses that section 387 of the code, covering this subject, as well as rule 11 of this court, has been substantially followed, and that the proper objections were seasonably interposed, and exceptions duly preserved.

Numerous other errors have been assigned and argued which we consider unnecessary to determine. Our silence in reference thereto is not to be construed as indicating, one way or the other, our opinion concerning them; and as they will probably not occur at another trial, we refrain from further mention of them.

It is to be regretted that this judgment must be reversed; but for the errors pointed out there is no other alternative. Were they not of such serious importance, and had they not so manifestly contributed to the verdict, as we have already said, they might be overlooked. In the haste and confusion

of a hotly contested trial they were doubtless committed, but it is apprehended, in the event of another trial, that with this and other similar decisions of this court called to their attention, the trial court and counsel will avoid the mistakes of the former trial.

The judgment is reversed, and the cause remanded for a new trial.

*Reversed.*