Bissell, J.
In this suit the mortgagees and attaching creditors are contesting their title to a lot of personal property which belonged to the Strater Thorp Drug Company, a corporation doing business in Durango and at other points in the state. Up to the early part of July, 1893, the drug company were the undisputed owners and in possession of the property. In stating the facts on which we predicate our judgment we shall follow the evidence produced by the mortgagees in support of their title *531 because not only does the verdict of the jury manifestly depend on it, but because we are thoroughly satisfied they maintained their case, and that a verdict finding otherwise could not be supported and must inevitably have been set aside. In so far as it is attached by the testimony of Strater we do not think it is at all shaken. We give little credence to his testimony, and in this respect are evidently in entire accord and .sympathy with the jury. The drug company became embarrassed in the summer of. 1893. It owed the State National Bank a large debt contracted at various times and for various purposes in the interests of the corporation. The bank commenced negotiations looking to the execution of ' a security therefor. They started about the 7th of Juty, and the propriety of attachment, bill of sale, or chattel mortgage was discussed between , the parties. It was concluded to give a chattel mortgage as the shortest, safest and least costly of the various methods which might be adopted. The chattel mortgage was prepared either on Friday or Saturday, the 7th .or 8th day of July, and so far as respects its preparation by the scrivener was completed on Saturday evening. It was probably signed by the president and secretary of the company on that date and turned over to a notary to fill out and indorse the acknowledgment. It is quite probable the parties acknowledged its execution when it was handed to the notary. According to the terms of the mortgage as it existed on Saturday, it contained this clause:
“ Also, that until said indebtedness, and every part thereof, and all interest, as aforesaid, shall be fully paid, said party of the first part, its successors or legal representatives, will not sell or dispose of, or' attempt to sell or dispose of, the said property, goods and chattels, nor any part thereof.” There was also another clause found later in the instrument substantially reciting an agreement that, until default shall be made b.y the drug company in the performance of some of its conditions or agreements, the said drug company “ may keep, retain and use the said goods and chattels.” After this execution of the instrumient and on Sunday it was turned *532 over to the attorney representing the bank for inspection and ' to determine whether in all respects it was legal, regular and sufficient in form. The attorney made some question about the words “ retain and use,” and to avoid any ultimate question respecting the validity of the instrument growing out of that feature, its erasure was requested. The evidence clearly shows that the officers of the drug company assented to their elimination, though whether this was done prior to the time that the instrument was given to the notary for acknowledgment is not clear. It is, however, very evident from the testimony, at least it is clearly established by the weight of it, and to our judgment satisfactorily juoven, that the words were erased before the delivery of the instrument. Strater disagreed with the other witnesses respecting some of the pivotal matters which we state. On Monday, the 10th of July, and about noon of the day, the mortgage was returned to the Strater Drug Company, having only been temporarily out of their possession for the purpose of examination, and at that time Strater formally delivered it to the mortgagees. We concede that Strater denied this ; denied any consent to the erasure of the words “retain and use,” asserted a prior delivery of the instrument, and insisted that he did not have it in his possession, or deliver it on Monday noon to the mortgagees; but he is so completely contradicted by the evidence of every other witness in the case who knew anything about it, and there is such an inherent improbability in the story which he tells, and we are so thoroughly impressed with its inaccuracy that, like the jury, we do not hesitate to disregard it. We therefore on the record as it stands decide the mortgage was not delivered until the noon of Monday, the 10th, that the words “retain and use” had been erased by consent of the mortgagors before this time, and that on the noon of that day the drug company delivered the instrument to the mortgagees for the purpose of securing their debt. Concurrently with the delivery of the instrument the mortgagees took immediate possession of the property, remained in possession for some time, when the appellant here levied *533 the attachments on the goods and attempted to make the debts by the levy. The mortgagees replevied. The attaching creditors defended on various grounds, and the verdict of the jury being against them bring the case here by appeal. So far as we are able to discover there are no other important matters of fact suggested by the record, and enough has been stated to exhibit the facts in dispute and to enable us to decide the various propositions on which the appellant relies to reverse the judgment.
The appellant presents many questions of greater or less importance. As we look at it there are but a very few of sufficient magnitude to justify the reversal of the ease if we should accede to his contentions. We shall therefore only notice those which would, if sustained by proof, and warranted by the law, justify a reversal, paying no attention whatever to the minor propositions which we do not regard as of vital significance. The appellant’s counsel have very properly, in a manner which aids the court very much in formulating its opinion, stated the principal propositions on which they rely.
At the time of the trial, the mortgagees produced the instrument through which they derived title. This was the mortgage to which we have referred. They offered no evidence respecting the authority of the president and secretary to execute the instrument by way of proof of a resolution of the directors to that end. The appellant strenuously insists that this is a manifest error. Whatever might be the rule under other circumstances we are very pronouncedly of the opinion the appellant is in no condition to raise the question and the matter was never so presented to the trial court as to compel the mortgagees to offer proof of the authority of the officers of the company to execute such an instrument where what was offered was regular on its face and under the seal of the corporation. There may be some circumstances under which this proof must be made by the party who produces an instrument of this sort when it covers the entire property of a corporation, and its execution, delivery and enforcement will result in the absolute destruction of the *534 business of the corporation. It is, however, unnecessary to determine when and under what circumstances this rule must be observed. It is enough to decide that in this case, and under the evidence as we read it, it is wholly inapplicable. In the first place we disagree with counsel for the appellant in their conclusion that an issue is raised respecting the execution of the instrument. It is true they deny that the plaintiffs were entitled to the possession of the goods by virtue of any valid chattel mortgage made, executed, acknowledged or delivered by the drug company to the plaintiffs. If this denial is anything when viewed with reference to the allegations of the complaint, it is in any event a negative pregnant, and does not deny the execution, acknowledgment or delivery of the instrument by the drug company, although it does deny the execution, acknowledgment and delivery of a valid chattel mortgage. The denial is in such form that it is very clear the pleader did not attempt to raise an issue respecting the acknowledgment and execution. This is undoubtedly necessary if the parties intend to question the authority of the officers "to execute the instrument sued on and which is the foundation of the plaintiff’s title. If there be no issue tendered by the defendant and it is on him to present it, the plaintiffs may rely on the presumption flowing from an instrument regular on its face, signed by the proper officers, and under the seal of the company. 4 Thompson on Corporations, § 5029; Bank of United States v. Dandridge, 12 Wheat. 64; Gorder v. Plattsmouth Canning Co., 36 Neb. 548 ; New England Wiring & Construction Co. v. The Electric Light Co., 84 Me. 284; Eureka Iron Steel Works v. Bresnahan, 60 Mich. 332; Salem Bank v. Gloucester Bank, 17 Mass. 1.
These and many other authorities which might be cited are clear to the point that an instrument regular on its face and signed by the proper officers under the seal of the corporation presumptively was executed under authority delegated in the proper manner and by the proper powers to the officers. Whenever it is desired to attack the regularity of an instrument of this description the contestants must tender *535 an issue and support it by competent proof. This was not done by the appellant and he may not complain because the mortgagees offered no proof on this point.
The validity of the instrument is likewise attacked because of the presence of the words “ retain and use ” as originally found in it. We shall enter into ho extended discussion respecting the point urged with some apparent confidence by counsel nor support the judgment by an argument based on the proposition that because it provided that the company would not sell or dispose of the property these words in no manner limited, controlled or obviated it, and that the restriction was not removed by the insertion of the words “ retain and use.” It is not clear that the words “ retain and use ” could be construed as operative to give the mortgagors power of disposition in the face of that direct covenant not to sell. Since this, however, might be under some circumstances a debatable question, we prefer to put our decision squarely on the ground that the words “retain and use ” were erased prior to delivery with the consent of the parties executing it. For the purposes of this appeal, the words “ retain and use ” are not in it. We do this even in the face of the general practice which appellate courts pursue, which is to base a decision on a legal proposition respecting which they have very little doubt rather than to rest it on a matter of fact which is in dispute in the record. Since, however, we conclude the jury must have found this fact with the mortgagees in order to render the verdict, and since we are thoroughly convinced the erasure occurred before delivery with the consent of the officers, we put the decision on that precise ground. The record clearly shows in our judgment the words were erased before the instrument became a valid one. If this is true, it is folly to argue the question whether, if the words were in at the time the mortgagees took it and went into possession, they were broad and ample enough to overcome the specific limitations found in the prior part of the security.
The mortgage appeared to be for more than the money which had been advanced by the mortgagees to the drug *536 company, that is, talcing Strater’s testimony as true. There is no other evidence to support the contention, and we are not entirely clear whether his evidence comported with the exact facts. But according to the proof as it stands, there is enough in the record to support the security, even supposing his statements were true. The mortgage apparently was for some $7,000 more than the sum which had been loaned to the company. When Strater was on the stand, he gave evidence to the point that this money, $7,000 or $8,000, had been loaned directly to him and his father and not for the benefit of the company. He did not tell the purpose for which they borrowed it nor the objects to which it was devoted, nor the circumstances under which the loan was made, nor in other respects so far identify it and make his testimony clear, distinct, specific, and positive on the proposition that we can but doubt Avhether he was entirely fair and honest in his statement of the facts respecting this loan. Whether he was or not, we do not believe that under the evidence the inclusion of this sum in the mortgage was done in bad faith, or would be operative to render the security I invalid because of it. It appeared that the drug company had been attached for $7,000, and were compelled to go to the bank to borrow money to relieve themselves from the impending trouble. As a condition the bank insisted that the company should indorse the paper for the loan which Strater says had been antecedently made to him and his father. The company consented, indorsed the paper and the bank thereupon made the loan. This would of itself probably furnish sufficient consideration for the indorsement by the company, and in any event remove the act of the bank in including this money in the mortgage from the realm of fraud or wrongful intent. Even though it might appear that they were not entitled to enforce their security to its full extent it would still be valid as between them and the attaching creditors. We do not understand, however, that except as a legal proposition, this is an inquiry of any importance. It would not appear that the bank would or could *537 realize from the enforcement of their security any sum more than sufficient to satisfy the undisputed claims which they held against the corporation.
The only other point which we deem it necessary to consider and decide respects the instructions which the court gave and the error which the parties have predicated on that matter. Before proceeding to discuss it we will express some general principles which have been established by the appellate courts of this state. Since the amendment of the code it is wholly unnecessary to take exceptions to instructions because the legislature expressly provided that no exceptions need be taken. Notwithstanding this fact it has been decided by the supreme court, which we are bound to follow, that notwithstanding this provision the complaining parties must show that they objected to the giving of the instructions, and at the time, raised the questions which, they urge as error, having given the trial court an opportunity to correct the thing which is complained of. This much has been very clearly adjudged. It is equally well settled that the judgment will not be reversed because of instructions which are erroneous and technically faulty, if as a whole the matter in dispute was clearly and plainly put to the jury, and they were rightly instructed on the main questions. -We are inhibited by statute from reversing judgments which are apparently right, where the error committed affects no substantial rights of the parties. The force and effect of this statute has been repeatedly recognized by the courts. Pike v. Sutton, 21 Colo. 84; Wray v. Carpenter, 16 Colo. 271; D. & R. G. R. R. Co. v. Ryan, 17 Colo. 98 ; Williams v. Williams, 20 Colo. 51; Coe v. Waters, 7 Colo. App. 208; Patrick Red Sandstone Co. v. Skoman, 1 Colo. App. 323; Salazar v. Taylor, 18 Colo. 538.
"We have cited these cases because in them are found full support for the doctrine which we announce, and we believe they are adequate authority to support this opinion. The instruction complained of, and in fact the only one which, as we view it, is subject to grave criticism, or which under any circumstances would warrant a reversal of the case, is one *538 given by the court in its general charge without request of either party. It substantially told the jury that, if any witness was found to have testified falsely upon any material issue, the jury were at liberty to disbelieve the evidence of such witness except in so far as it was corroborated by other credible evidence. The instruction is vigorously attacked and probably correctly so in the light of the authorities. It seems to be clearly settled by the Last Chance M. & M. Co. v. Ames, 23 Colo. 167, that all instructions on this subject and relating to false evidence given by a witness must contain the limitation that the witness has willfully sworn falsely to a material fact. We are quite ready to concede that such is the law of the state. Whether it is always applicable, whether it is always to be the rule in similar cases, and how far it is possible for a witness to utter falsehoods in giving testimony, and the party producing him still have the right to insist the jury shall believe his evidence, are matters we need not consider. While we concede this is the law, and perhaps as an original proposition would not criticise it, we are not at all clear that under all circumstances this error will always compel us to reverse a judgment. According to our view of the record, this case was in all other respects properly tried. The case was correctly submitted to the jury by a fair and adequate statement of the law which in no important features violated any well settled legal rules. The evidence clearly and adequately supports the verdict and there is no credible testimony to the contrary on which a verdict could be based, and we are of the opinion that had any other verdict been rendered we should, regardless of what the trial court might have done, set aside that verdict as being against the evidence. Under these circumstances must we hold that the case is to be reversed because of the error in this instruction, when the code commands us not to reverse a judgment because of an apparent error when substantial justice has been done between the parties? We gravely question it. Whether we question it or not, we are decidedly of the opinion the appellant is in no condition to raise the question. We now come to a *539 statement of what the record shows respecting these instructions. They are not found in the record at all, at least not so found as to enable us to conclude that the instructions to which the appellant refers were given on the trial. It has many times been held that instruction's are no part of the record unless they be identified by the signature of the judge, or in some other way, so that the appellate court can see that the instructions complained of were really given. They must be identified. Because certain instructions are by the clerk included in the record, it is no evidence on which the appellate court may proceed and thereby hold that the instructions thus found were given by the court to the jury on the trial of the particular case under review. It may not be under our code at all necessary to include the instructions in the bill of exceptions, as is the doctrine in some states, but not being found there, whatever is found in the record must be in some way identified to enable us to ascertain that those instructions were given. This general doctrine is expressed in The People v. January, 77 Cal. 179 ; Butler v. Roberts, 118 Ind. 481; Barnes v. Jamison, 24 Texas, 362; Jones v. Buzzard & Herndon, 2 Ark. 441; Cadwallader & Co. v. Blair & Van Nostrand, 18 Ia. 420.
Wherever it is a matter of statute this whole question depends on the enactments. In this state we have a statute respecting trials by juries. It is section 187 of the code. That section provides that the instructions offered or given by the court must be filed with the papers and with the indorsement indicating the action of the court, if they are to be taken as part of the record without being made such by the bill of exceptions. This statutory provision undoubtedly governs, and we have a right to go to the record to find out what instructions were given. The appellants in any cause have always the right to refer the court to the instructions found in the record and printed in the abstract and thereon assign error and compel the appellate court to review. But it will be noticed that this statutory provision requires that these instructions must have an indorsement indicating the *540 court’s action -when they are a part of the record. It is only when the record contains an indication of this action that the appellate courts may either review them or the appellants complain because of the error contained in them. We do not believe the case of Gibbs v. Wall, 10 Colo. 153, is at all at variance with this proposition. In that case the instructions were found in the bill of exceptions, and of course were by the signature of the judge in the bill clearly and sufficiently identified. In that case the question raised was whether the exception had been properly saved. These words appeared in the instructions in that case, but the words given or refused did not appear, and the court very properly held that the party could not be prejudiced by the failure of the court to perform his duty. There was no question in that case, as in this, whether in point of fact the instructions were so identified as to enable the appellate court to determine whether or not they were given. As the statute now stands the instructions are to be filed with the papers, and must bear an indorsement indicating what was done with them. Wherever parties intend to predicate error on the instructions they must see to it that they are so filed and that they bear an indorsement whereby they are identified as having been given. It is no trouble to counsel to look after these details, if they want to make up a record which will compel the appellate court to review the question. We are ready to concede- that in the bill of exceptions there are found a couple of paragraphs reciting that the appellant excepted to certain parts of the instructions among which was this. It might therefore be fairly contended that as to this particular instruction the matter was abundantly saved, and we must proceed to determine whether or not we will reverse the case for this error alone. When we come to examine the matters contained in the bill of exceptions we find as it is there recited that the defendant excepted only to the last paragraph of the instruction. There is nothing to indicate what the entire instruction was, nor whether there was outside of it and beyond it in the other part of the instruction or in the *541 other part of the charge any modifying phrase or statement which would cure the error. The whole charge is not set forth in the bill of exceptions. Only those portions are therein quoted to which the defendants desired to save air exception, and we are unable to find out what the entire charge was because it is not properly preserved in the record. Under all the rules laid down by the appellate courts we may not reverse the case because of this error without having the whole charge before us. This whole discussion may look like a technical professional plea by counsel to uphold or overthrow a judgment which has been entered. "We confess that technical reasons and principles do not generally commend themselves to our judgment. We do discover, however, it is the duty of the court when a correct judgment has been entered on competent evidence, and substantial justice has been done between the parties, to be astute even to the verge of technicality in order to support that sort of a" judgment rendered on that kind of evidence. This we firmly believe was done in the present case, and we have therefore discussed this matter of the instruction on the technical as well as on the general basis. We do not believe that this sole error ought to reverse the case under the circumstances surrounding this trial. We are further quite of the opinion that the appellant has failed to present a record showing the • instructions of the court and identifying them in such manner that he has a right to call on us to review their accuracy and determine their sufficiency, and in this faulty condition of the record we regard the accuracy or inaccuracy of that or any other instruction as not being properly before the court.
There is considerable argument directed to the point that the instructions are not harmonious and are totally inconsistent, which would compel the court to reverse the case. What we have already said respecting the condition of the record is a sufficient answer to this contention. But beyond all this we do not believe when the instructions are analyzed and the charge taken as a whole, that there is the inaccuracy of *542 which counsel complain, or if there he some slight discrepancy, we-do not believe that it is of sufficient gravity or magnitude to bring the case within the rule which has been sometimes announced that a case must be reversed because of inconsistent instructions.
We have given this case very considerable and careful attention. It is the second time that this mortgage has been before the court for consideration, and this circumstance, combined with the very earnest, elaborate and able briefs of counsel, have led us- to exercise unusual care in the determination of this appeal. We are free to admit that some of our positions are taken on debatable grounds. Notwithstanding this fact we are thoroughly and well satisfied our conclusions are-correct on the record that the verdict of the jury has brought about equitable and fair results and done substantial justice between the parties, and the judgment which has been entered thereon ought therefore to be affirmed.

Affirmed.

Wilson, J., not sitting.