[No. 5691.]

THE NOVELTY THEATER COMPANY v. WHITCOMB.

1. **Master and Servant—Contributory Negligence of Servant** —An actress, who voluntarily, and without any necessity so to do, takes part in a, boisterous frolic of her fellow actors, cannot complain of her employer if she receives injury therein. By continuing upon the stage while the frolic is in progress with as full knowledge of the danger incident thereto as any person had, when she might have withdrawn, she assumes the risk of injury attendant upon remaining.—(112-115)

2. **Vice-Principal—Fellow Servants**—For the acts of the vice-principal within the scope of his employment, and such as properly devolve upon the master in the duty which he owes to his servants, the master is liable. For such acts as relate to the common employment and are on a level with the acts of his fellow laborers, it is otherwise. The test of liability is the character of the act, rather than the relative rank of the servants.—(115)

3. **Liability of Master for Acts of Servant**—The master is liable for the acts of the servant only when done within the scope of his employment; and no larger power can be imputed to the servant than the master himself possesses.—(116)

A stage manager has no authority to sanction a boisterous frolic among the troop, involving the throwing of missiles, and

other riotous and disorderly conduct; and his consent to such conduct does not make the proprietor of the show liable for an injury received by one of the actors who participates in the frolic.—(116)

*Appeal from Pueblo District Court*—Hon. N. WALTER DIXON, Judge.

Mr. E. C. STIMSON, and Mr. JAMES J. McFEELEY, for appellant.

Mr. M. J. GALLIGAN, for appellee.

Mr. JUSTICE BAILEY delivered the opinion of the court:

The action is to recover damages for personal injuries sustained under these circumstances and conditions: The plaintiff below, appellee here, Lottie Whitcomb, with her husband, were employed to perform as actors by The Novelty Theater Company, appellant here, defendant below, in the city of Pueblo at the Empire theater, for the week ending April 3, 1904. The act which the plaintiff and her husband presented consisted in the imitation by them of the action and noises of certain barnyard fowls, as the rooster and hen, interspersed with singing and dancing. A portion of the fifth paragraph of the complaint, which sets forth her first cause of action, and that is the one upon which recovery was had, is as follows:

"Fifth.—That unknown to plaintiff the said defendant wrongfully and negligently arranged for what was termed a charivari on the closing night of plaintiff's engagement at said Empire theater, and on April 3, 1904, at about 10:30 p. m. on the closing night of said plaintiff's engagement at the said Empire theater and while said plaintiff was on the stage in the capacity of actress in the employ of defendant in the regular line of her duty the said defendant in furtherance of its plan and scheme in connection with

the said charivari, wrongfully, negligently and carelessly threw cans and other missiles on the stage where said plaintiff was performing at said theater, and wrongfully and negligently turned out the lights on said stage and in a rough, rude and reckless manner the said defendant, in pursuance of its said charivari plan, struck or caused said plaintiff to be struck on the ankle by a can thrown in furtherance of said plan for said charivari, which said can struck the said plaintiff with great force and violence about her right ankle, causing the same to be sprained and permanently injured.''

For a defense to the cause of action, beside the general issue which the defendant tendered and the plea of contributory negligence, there was a separate further defense as follows:

''That on the night of April 3, 1904, this plaintiff, in connection with her co-actors at said theater, planned a little amusement among themselves, without the knowledge or consent of this defendant, and outside of their employment, said amusement consisted among other things of throwing tin cans and other missiles at each other, and that none of the cans or other missiles so thrown at this plaintiff struck her on or near her ankle or caused her any injury whatever.

''That this plaintiff is a very large and heavy person, and while on the stage, and without the knowledge or consent of this defendant, and outside of her duty, according to her employment, she mounted a chair on said stage, said chair being about twenty inches high, from the floor of the stage on which she was performing, and in getting down from said chair to the stage of said theater, she jumped from the said chair of her own free will, and struck the stage floor in a manner which caused her ankle to become injured.''

The plaintiff replied, joining issue upon all new matter. Trial was had with a verdict for the plaintiff for $2,000.00, and after the overruling of a motion for a new trial, judgment was rendered thereon. Defendant brings the case here for review.

It is contended by the defendant,

First. That if the injury complained of occurred through the negligence and improper conduct of other employees of the company as alleged, such conduct was without their employment, unauthorized by the company, and that it may not be legally held for the damages resulting therefrom;

Second. That the plaintiff had full knowledge of what was going on, but still continued to act her part, and so, by remaining at her post, voluntarily assumed the risk incident thereto; and,

Third. That the plaintiff was guilty of conduct contributing to the injury and may not therefore recover.

It is admitted that in the presentation of the respective parts of the plaintiff and her husband no chair was necessary, and that up to the night in question none had been used, while on this occasion the plaintiff in her performance mounted one that stood about twenty inches above the stage, and thus placed herself in a position of increased danger. It is also undisputed that, after she had begun her act, and for a considerable time before the injury occurred, the boisterous and unruly conduct of the other actors, which it is alleged finally resulted in damage to the plaintiff, had been in progress. It also appears that while she stood upon the chair she was imitating a hen, with her husband dancing around her imitating a rooster, and that her action in mounting a chair was wholly voluntary and without the scope of her employment, and beyond the purview of her part, as theretofore rendered. Such conduct of

(8)

necessity must have attracted particular attention to herself, and doubtless substantially contributed to the result complained of. It could not fail to make her more conspicuous than ordinarily, and must have increased the zest and zeal with which oyster cans, old shoes, and other missiles were thrown. She simply by her own action in this respect made herself a special target for her companions. The injury was sustained as she stepped to the stage from the chair. Had she remained upon the floor, as in previous performances, it is altogether possible that no damage would have been inflicted. Under the admitted facts, plaintiff was clearly guilty of contributory negligence, as a matter of law, in our view of the situation.

It is contended by defendant, and there is proof to show, that prior to going upon the stage that evening for her own part, plaintiff had actively engaged in similar conduct toward other performers, and seemed to be enjoying herself along with the rest. This of course is denied. Be that as it may, in any event, it is clear that with full knowledge of what was going on, and the character of the amusement in which the other actors were indulging at her expense, for several minutes before any harm befell her, the plaintiff voluntarily continued in her performance and thereby, as is contended by the defendant, assumed all risk of injury to herself.

At the close of plaintiff's testimony a motion for a nonsuit, on substantially the same grounds now urged in argument, was interposed and denied. We are of opinion that this motion should have been sustained, for each of the reasons suggested. The acts complained of, which occasioned the injury, if they in fact did so, were clearly without the scope of the authority of the fellow actors, including the stage manager. Manifestly the whole affair was a frolic among the performers themselves for their own

amusement, edification and diversion, and while the plaintiff now denies any knowledge of, or part in, that jollification, such denial is contrary to human experience, reason and observation, and is probably contrary to the fact, as we view the matter. Anyhow it is settled, that for a considerable period while this side play was in progress, after plaintiff's appearance upon the stage, she still remained at her post and continued her act, with as full knowledge of the danger incident thereto as anybody else could possibly have had, when she might easily have withdrawn and avoided it all. By failing to do this, under such circumstances, she assumed the risk attendant upon her remaining. She thus plainly made possible the injury, which could not otherwise have occurred, and thus contributed thereto by her own negligent conduct.

The conduct complained of on the part of her fellow actors amounted to a willful battery, and it may safely be assumed, from common knowledge, that such acts are not fairly within the scope of the actor's employment. No more has a stage manager the power to authorize such acts, of his own volition, and thus bind the company. It would be absurd to so hold. To bind the company for damages resulting from such conduct and actions on the part of its employees, they must have been expressly or impliedly authorized, and if by implication, then in such manner as to leave the matter free of doubt. No such authorization, either express or implied, has been shown.

There appears to be no doubt, upon a full consideration of all of the testimony, that these stage people were all fellow servants. Any of the acts complained of, which the stage manager is charged with having committed, were not within the scope of his employment; but on the contrary, were entirely

outside of it. It does not appear from the testimony, or from anything in the record, that he was acting in any such capacity as to entitle him to be considered a vice-principal.

"All who serve the same master, work under the same control, derive authority and compensation from the same source, and who are engaged in the same general business, although it may be in different grades or departments, are fellow-servants, each taking the risk of the other's negligence."—26 Cyc. 1282, and cases cited.

The rule, as we gather it from the best reasoned cases, is that for the acts of the vice-principal, done within the scope of his employment, and such as properly devolve upon the master in his general duty to his servants, the master is liable, while for all such acts as relate to the common employment and are on the level with the acts of the fellow laborer, the master is not liable. In other words, the test of liability is the character of the act, rather than the relative rank of the servants.—*Deep M. & D. Co. v. Fitzgerald,* 21 Colo. 533-543; *Poor Man Silver Mines, Ltd., v. Develing,* 34 Colo. 37-44-46.

There is no liability on the part of the principal as to matters beyond the scope of the authority of the superior servant. In order that the master's liability may be established it must be shown that the superior servant had authority, either express or implied from the nature of his functions and the regular course of the business, to do the act or give the order alleged to be negligent. Authority to commit acts of personal violence amounting to battery cannot be inferred. Larger powers cannot be imputed to an agent than the principal himself possesses.—Labatt's Master and Servant, § 537, pages 1539-40, and cases cited.

If a servant, whose negligence visits an injury

on another servant, is acting outside and beyond the line of his duty at the time, and doing that which he was not employed to do, the master will not be liable.
—*Oil Company v. De Vond,* 25 S. W. 43; *Samis v. Chicago, etc., R. R. Co.,* 97 Ill. App. 28; *Pettigrew v. St. Louis O. & S. Co.,* 14 Mo. App. 441.

The law seems to be settled that where a servant continues to work with knowledge, actual or constructive, of danger to which an ordinarily prudent person refuses to subject himself, such a one is guilty of contributory negligence.—26 Cyc. 1239, and cases cited.

Or stated in another way, to render a master liable for injuries to his servant the latter must have exercised ordinary and reasonable care, and if the injured party might, by the exercise of ordinary and reasonable care under the circumstances, have avoided the consequences of defendant's negligence, he cannot recover.—*Last Chance M. & M. Co. v. Ames,* 23 Colo. 167; 26 Cyc. 1261.

These statements of the law describe accurately and precisely the situation of the plaintiff, having reference to the conditions under which she was injured. Upon the facts shown it is plain that she might readily have withdrawn from her position of danger. Had she done so all chances of harm to her would have been removed. She appears, however, to have been willing to remain, with full knowledge of the situation, and thus subject herself to an apparent danger, and should and must be charged with the consequences of her voluntary act.

We cite as being instructive upon the question here involved, and as upholding the general conclusion reached, the following: *Sagers v. Nuckolls,* 3 Col. App. 95; *The Orphan Belle M. Co. v. The Pinto M. Co.,* 35 Colo. 564; *Iowa Gold M. Co. v. Duefenthaler,* 32 Colo. 391; *Lord v. Pueblo S. & R. Co.,* 12

Colo. 390; *Western Union T. Co. v. Olsson*, 40 Colo. 264; *Smith v. Van Sciver*, 58 N. J. L. 190.

We have given the case full and careful consideration from every viewpoint, and interpreting the testimony most favorably to the plaintiff, we are of the unalterable conviction that the defendant is not legally liable, and the judgment rendered cannot be permitted to stand.. It is therefore reversed and the cause remanded, with instructions to the court below to dismiss the complaint.

*Reversed and remanded.*

CHIEF JUSTICE STEELE and Mr. JUSTICE WHITE concur.